THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CLAXTON HARMON WILLIAMS III, Defendant-Appellant.

Fourth District   No. 4—88—0771

Opinion filed November 9, 1989.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle, Robert J. Biderman, and J.A.C. Knuppel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

After a jury trial, defendant was convicted of criminal sexual assault. (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(1).) Subsequently, the trial court sentenced him to seven years' imprisonment. Defendant ap-

peals, arguing: (1) the trial court erred in refusing to instruct the jury on criminal sexual abuse (Ill. Rev. Stat. 1985, ch. 38, par. 12—15(b)(1)); (2) the trial court erred in failing to appoint different counsel to represent defendant during the post-trial motion proceeding; and (3) failure to include a mental state for criminal sexual assault in the jury instructions constituted reversible error.

We affirm.

### COMPLAINANT

Complainant testified that on July 25, 1987, she was 15 years old and living in Danville with her father, brother, and grandmother. She met defendant about a month before the incident. She had been to his house on two previous occasions. She had spent the night at defendant's house the day before the assault, returning to her home at 6:15 a.m. She and defendant had planned to go to a movie on July 25, 1987, but complainant overslept. At about 11:55 p.m., complainant, who was near her home, saw defendant's mother in a vehicle. Defendant's mother stopped and asked if complainant were coming over to her home. She told complainant defendant was in the vehicle behind her vehicle. Complainant stated she talked to defendant and went with defendant and his passengers to defendant's home. Complainant and defendant sat in the living room for 5 to 10 minutes and talked. Defendant then asked if she would go upstairs to his bedroom and talk. She went up to his room, where she and defendant kissed. She asked defendant to get her a drink of water, which he did. After defendant returned, he placed a dresser in front of the door. Complainant did not say anything about the dresser, and she and defendant continued kissing. She moved away from defendant and stood up. Defendant asked what time she had to be home. After she responded, he indicated they would engage in intercourse before she left. After complainant refused, defendant started removing her clothing. A struggle ensued, during which she hit and kicked defendant. Defendant held her hands together and removed her pants. When she refused to turn over, he grabbed her neck, and turned her over. She could not breathe and told him to stop. Defendant removed her panties and had vaginal intercourse with her. Complainant was screaming. Defendant's brother came upstairs and partially pushed the dresser away from the door. Defendant put his hand over complainant's nose and mouth and told his brother to shut the door.

After defendant left the bedroom, complainant tried to find her clothing but only found her jeans, shoes, and top. Eric, defendant's brother, came up to the room again but complainant was screaming so

he left. Complainant asked defendant to take her home when she went downstairs. Defendant pushed her away from the door. He told her she could not leave until she stopped crying. Eventually, defendant dropped her off near her aunt's house. She told her brother, a cousin, and her father what had happened. Complainant stated her vaginal area was swollen; however, she did not notice any bruises on her neck.

## NURSE

A nurse at the hospital testified she did not observe any physical trauma to complainant's neck. Detective Larry Rollins stated he noticed redness on complainant's neck.

## DEFENDANT

Defendant stated that he was 19 years old on July 25 and 26, 1987. He and complainant had never planned to go to the movies. She usually came to his house to watch television. She had been at his house three times prior to the incident. On July 25, 1987, at 11:55 p.m., he drove to complainant's house and asked her to come to his house. No one was in the car with him, and his mother was not nearby. Defendant stated he and complainant talked in the living room for 15 to 20 minutes. He then asked her to come upstairs and engage in sexual intercourse. She agreed. While in the bedroom, they began kissing. Defendant asked complainant to remove her clothing. She agreed to do so and asked defendant to get her a drink of water. When he returned, she was undressed. He moved the dresser in front of the door to insure privacy. They engaged in intercourse.

Defendant further stated his brother came in and called complainant some names. Defendant told his brother to leave them alone and followed him out of the room. Defendant stated he did not choke complainant and she did not kick him. At approximately 1 a.m., he took her home. Defendant admitted he left Danville two days after the incident. He returned to Minnesota, where he was on probation for assault and theft. A warrant had issued for his arrest in Minnesota due to a probation violation. He was also on probation in Illinois in July of 1987.

## Opinion

Initially, defendant argues the trial court erred in refusing to instruct the jury on criminal sexual abuse. The defendant was charged with criminal sexual assault pursuant to section 12—13(a)(1) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 12—13(a)(1)). The information stated defendant: "Committed an act of sexual penetration with [complainant], in that by the use of force or by the

threat of the use of force his penis had contact with the vaginal area of [complainant]." Section 12—13(a)(1) of the Code states:

"The accused commits criminal sexual assault if he or she:

(1) commits an act of sexual penetration by the use of force or threat of force." (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(1).)

Criminal sexual assault is a Class 1 felony. (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(b).) At trial, complainant testified she was 15 years old when the incident occurred. Defendant gave his birth date, which established he was 19 years old. Defense counsel tendered instructions on criminal sexual abuse and argued under the facts of the case the jury should receive instructions on the less serious offense.

Section 12—15(b)(1) of the Code states:

"Criminal Sexual Abuse.

\* \* \*

(b) The accused commits criminal sexual abuse if:

(1) the accused was 17 years of age or over and commits an act of sexual penetration or sexual conduct with a victim who was at least 13 years of age but under 16 years of age when the act was committed." Ill. Rev. Stat. 1985, ch. 38, par. 12—15(b)(1).

Defendant argues criminal sexual abuse is a less serious offense than criminal sexual assault. Since the evidence and indictment support a conviction of the lesser offense and an acquittal of criminal sexual assault, the jury should have received the instructions. Therefore, the defendant contends the trial court erred in refusing to instruct the jury on criminal sexual abuse. Defendant relies upon *People v. Bryant* (1986), 113 Ill. 2d 497, 499 N.E.2d 413, and *People v. Krueger* (1988), 176 Ill. App. 3d 625, 531 N.E.2d 396.

An included offense is an offense which is established by proof of the same or less facts than all of the facts or a less culpable mental state than that which is necessary to establish commission of the charged offense. (Ill. Rev. Stat. 1987, ch. 38, par. 2—9.) For the offense to be an included offense, it must not have any elements not in the greater offense so that it is impossible to commit the greater offense without committing the included offense. (*People v. Gulley* (1987), 162 Ill. App. 3d 545, 515 N.E.2d 1309.) However, a defendant charged with one offense cannot be convicted of an uncharged offense which is not an included offense of the offense for which he is charged. *People v. Schmidt* (1988), 126 Ill. 2d 179, 533 N.E.2d 898.

In *Bryant* (113 Ill. 2d 497, 499 N.E.2d 413), the court noted section 2—9 of the Code does not explain whether the abstract statutory

definition of the greater offense, the greater offense as alleged in the charging instrument, or the greater crime as its elements are established at trial controls the determination of which offenses are included within the offense charged. Bryant was alleged to have committed burglary. The indictment stated he performed a substantial step toward the commission of the offense by pulling away a screen and breaking a window with the intent to unlawfully enter a service station and commit a theft. Defendant argued he was entitled to an instruction on criminal damage to property. The trial court refused to give the tendered instruction. On appeal, the State argued the instruction was unnecessary because the indictment failed to allege the mental state necessary for a conviction of criminal damage to property. The supreme court in *Bryant found the instruction should have been given as the indictment set forth the broad outline of the included offense*. The court noted that the missing element was implicitly set out in the charging instrument.

The *Bryant* opinion indicates a continued rejection of the inherent relationship test and expressly shows a continuing policy of maintaining limits upon the theory by which an instruction upon a less serious offense is required. (*People v. Roberts* (1989), 189 Ill. App. 3d 66.) The purpose of requiring the giving of these instructions is to enable a jury to acquit on the graver charge while convicting on the included charge.

██ Here, however, the indictment did not set forth the ages of the defendant or complainant. This factor, coupled with sexual penetration or conduct, constitutes a broad outline of criminal sexual abuse. Additionally, the age of the parties was not implicit in the charging instrument. Therefore, under the rationale of *Bryant*, the included offense instruction was properly refused.

██ As the *Bryant* court noted, there are several limits on the operation of the included-offense doctrine. A defendant's instruction on the lesser offense is appropriate when the evidence would permit a jury rationally to find him guilty of the less serious offense and not guilty of the more serious offense. Therefore, the evidence in a particular case might preclude use of an instruction on the lesser offense. Additionally, an included-offense instruction is only proper where the charged offense requires the jury to find a disputed factual element, which is not required for conviction of the included offense. *Bryant*, 113 Ill. 2d at 507, 499 N.E.2d at 417-18.

Defendant also relies upon *Krueger*. In *Krueger*, defendant was convicted of attempt (murder). He argued aggravated assault was an included offense under the evidence presented and the indictment. The indictment alleged shots were fired at the victim's residence. Krueger

conceded that under the abstract statutory definitions of the offenses, aggravated assault was not an included offense of attempt (murder). However, the *Krueger* court, following *Bryant*, found the evidence supported a conclusion that the victim was placed in reasonable apprehension of an imminent battery. Therefore, the fact that the indictment did not allege the apprehension of battery element was not necessarily fatal. The indictment set out the main outline of the lesser offense, and the evidence supplied the missing element. We find *Krueger* is distinguishable from the instant situation. Here, the primary allegations in a sexual abuse charge are the ages of the parties and the sexual conduct. The indictment did not, therefore, set out the broad outline of the offense.

Defendant next urges this court to remand the cause and appoint new counsel to represent him at a new post-trial motion and sentencing hearing. Because of our resolution of defendant's first contention, it is unnecessary to address this issue.

Finally, defendant argues reversible error occurred because the instructions did not include a mental state for criminal sexual assault. Defendant did not object below or raise the matter in his post-trial motion. He urges this court to recognize the issue as plain error. Generally, a defendant is obligated to object to particular instructions and to offer proper ones. A failure to offer proper instructions constitutes a waiver of the issue on appeal. (*People v. Cregar* (1988), 172 Ill. App. 3d 807, 822, 526 N.E.2d 1376, 1386-87.) Defendant has waived review of this issue.

We note that criminal sexual assault is a general intent offense. (Ill. Rev. Stat. 1987, ch. 38, par. 12—13(a)(1).) In such cases, a mental state of intent, knowledge, or recklessness is implied. (*People v. Terrell* (1989), 132 Ill. 2d 178, 209; *People v. Burmeister* (1986), 147 Ill. App. 3d 218, 497 N.E.2d 1212.) Where the offense is a general intent crime and the mental state is implied by the crime, it is not error to omit the implied mental state from the jury instructions. *People v. Avant* (1989), 178 Ill. App. 3d 139, 532 N.E.2d 1141; *People v. Talley* (1988), 177 Ill. App. 3d 170, 531 N.E.2d 1139; *People v. Leonard* (1988), 171 Ill. App. 3d 380, 526 N.E.2d 397, *cert. denied* (1989), ____ U.S. ____, 104 L. Ed. 2d 162, 109 S. Ct. 1647; *People v. Ortiz* (1987), 155 Ill. App. 3d 786, 508 N.E.2d 490.

For the above reasons, we affirm the trial court.

Affirmed.

SPITZ and GREEN, JJ., concur.