THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ASHLEY EVANS, Defendant-Appellant.

Fourth District   No. 4—89—0217

Opinion filed June 29, 1990.

Daniel D. Yuhas and M. Jeffrey Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Dale M. Wood, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In December 1988, a jury found defendant, Ashley Evans, guilty of aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(a)(2)). The court sentenced defendant to 12 years' imprisonment. On appeal, defendant argues that (1) he was not proved guilty beyond a reasonable doubt because the victim's testimony was neither substantially corroborated nor clear and convincing; (2) he was denied a fair trial because his indictment charged that he "by the use of force *** caused bruising," yet the jury instructions and the State's closing argument told the jury to convict the defendant upon a finding that he "by the use of force or threat of force," caused any "physical harm" during the offense; (3) the trial court committed reversible error in denying defense counsel's request to instruct the jury on the lesser included offense of criminal sexual assault; (4) the State improperly defined the reasonable doubt standard in its closing argument; (5) he was deprived of effective assistance of counsel because defense counsel conceded during closing arguments that the State had sufficiently proved the elements of bodily harm and the use of threat of force; and (6) the State improperly argued in its closing argument that (a) defendant's statement to the police shortly after the alleged offense was tantamount to a full written confession, and (b) the sexual

penetration involved in the alleged offense was simply a precursor of other acts.

We affirm.

## I. THE EVIDENCE

In September 1988, a McLean County grand jury returned an indictment, charging defendant with the offense of aggravated criminal sexual assault. Specifically, the indictment stated that defendant:

> "[K]nowingly committed an act of sexual penetration by the use of force on [P.E.P.], said act involving the tongue of Ashley Evans and the vagina of [P.E.P.] and Ashley Evans caused bruising to [P.E.P.] by hitting and choking her ***."

A trial was held in December 1988. At trial, P.E.P. testified that shortly after midnight on September 6, 1988, she was walking with Pat Phillips and Dave Smith to pick up some beer. On their way to the liquor store, the group met defendant and decided to go to his apartment to drink. Approximately 10 or 15 minutes after arriving at defendant's apartment, Phillips and Smith left, saying they were going to get cigarettes. P.E.P. testified that shortly thereafter, she and defendant went next door to ask Robert Schlattman for cigarettes. Upon returning to defendant's apartment, defendant told P.E.P. that he wanted a mulatto baby. She refused his request to engage in sex. She testified that defendant then gained physical control over her, although she could not at first remember the manner in which defendant held her.

P.E.P. testified she screamed as defendant dragged her through the kitchen of his apartment and into the bedroom. She stated that defendant began choking her to prevent her from screaming. She also testified they were possibly in the kitchen when defendant began squeezing her throat. After she tried to bite defendant, he slapped her across the face and ripped her shirt off. She did not remember how defendant took the rest of her clothes off.

P.E.P. stated that defendant then placed his mouth on her vagina. At the time, he was dressed only in his undershorts. She did not consent to defendant's action. She testified that she was in a state of shock. Defendant engaged in this activity for a few seconds and stopped when floodlights came in the back and side windows. Subsequently, P.E.P. heard knocking at the front door. The police entered the apartment, but P.E.P. continued to scream.

P.E.P. described her injuries as a bruise on one of her arms, several bruises on her neck, a bruise near her hairline, and a black eye. She stated that the police photographed these bruises at the police station.

On cross-examination, P.E.P. testified that she sometimes had problems with her memory, that it was not defendant's idea for her to come to his apartment, and that Phillips and Smith did not ask her to go with them when they left. She explained that she did not want to go with them because she wanted to finish her beer. P.E.P. acknowledged that at the time of the incident she was taking Dalmane and she was not supposed to drink alcohol with that medication. Before she arrived at defendant's apartment, she had consumed eight beers. P.E.P. drank another beer while in defendant's apartment.

P.E.P. stated that she screamed the whole time defendant pulled her into the bedroom, but did not scream during the oral sex because defendant told her not to. P.E.P. testified that during oral sex, defendant was not pinning her down, she did not know where his hands were, and she did not scream because she thought it fruitless.

P.E.P. testified that she remembered describing the incident to Officer James Rash. She did not recall whether he asked her if she had been screaming. She did not recall telling Officer Rash that defendant would not let go of her neck, nor that when he started licking her vagina she screamed, at which point he stopped licking her vagina, started choking her, and then alternated between licking her vagina and choking her. P.E.P. testified that the whole incident was alarming, she could have been in a state of shock, and she was afraid.

On redirect examination, P.E.P. stated that the police asked her if she wanted to go to the hospital. She told them that was unnecessary.

Schlattman testified that on September 6, 1988, he was living next door to defendant. He indicated that on September 5, 1988, at about 11 p.m., he heard people arriving and leaving defendant's apartment. He stated that defendant and P.E.P. visited him around 11:30 p.m. and asked him to join their party. He did not recall the two asking for cigarettes. Around midnight, he heard a group of people leave defendant's apartment. Schlattman indicated that it was quiet for about 15 minutes, then he heard defendant and P.E.P. talking. P.E.P. asked defendant to allow her to leave his apartment. After defendant denied her request, P.E.P. began yelling for help and then began to scream. Subsequently, Schlattman went to a pay phone and called the police.

On cross-examination, Schlattman testified that he knew defendant, P.E.P., and Phillips because they were all clients at the Human Services Center. He also said he thought the screams from defendant's apartment were coming from defendant's living room. He stated that he did not hear any screams from the bedroom area until after the police arrived.

Officer James Rash testified that he was met by Schlattman out-

side defendant's apartment at approximately 2 a.m. He stated that he and Officer Michael Ripsch knocked on the front door of defendant's apartment. Getting no response, Officer Rash started toward the back of the house. On his way to the back of the house, Officer Rash heard a woman screaming for help. A door and a window were located at the back of the house. After knocking on the door, Officer Rash knocked on a wall. A few seconds later, defendant parted some curtains and looked outside. Officer Rash told him to open the door.

After the curtains closed, Officer Rash heard more screams and returned to the front door. He and Officer Mark Provanzano kicked it open. Officer Rash testified that he then saw defendant coming out of the bedroom, wearing only undershorts. Officer Rash went into the bedroom to check on P.E.P., finding her wearing only an open flannel shirt. He saw bruise marks on her neck and shoulders. Officer Rash later took pictures of the marks.

Officer Provanzano testified that after he and Officer Rash entered the apartment, he examined the area for possible physical evidence. Officer Provanzano found four buttons on the floor near the bed.

Officer Ripsch corroborated Rash's testimony. He informed defendant that he was under arrest for battery and criminal sexual assault. After he told defendant of his arrest, defendant, on at least three different occasions, stated that he could not understand how he could be arrested for criminal sexual assault because he was in his own apartment.

## II. THE ISSUES

### A. SUFFICIENCY OF THE EVIDENCE

■ Defendant first argues that the evidence was not sufficient to prove him guilty beyond a reasonable doubt of aggravated criminal sexual assault. Specifically, defendant argues that the complaining witness' testimony in a sex offense case must be either substantially corroborated or clear and convincing. However, this court recently held in *People v. Roy* (1990), 201 Ill. App. 3d 166, 185, that we no longer require in a sex offense case that the State must, in addition to proving the defendant guilty beyond a reasonable doubt, demonstrate either that the evidence is substantially corroborated or that the victim's testimony is clear and convincing. We adhere to the views expressed in *James* and *Roy* and review the evidence in this case accordingly.

■ A verdict reflects the jury's assessment of the credibility of the witnesses, a function generally within its province as the fact finder. (*People v. Cole* (1990), 193 Ill. App. 3d 990, 995, 550 N.E.2d

723, 727.) All alleged deficiencies in the State's case now being argued on appeal were argued before the jury which actually saw and heard the witnesses. (*Cole*, 193 Ill. App. 3d at 995, 550 N.E.2d at 727.) A reviewing court will not reverse a conviction unless the evidence is so unsatisfactory or improbable that a reasonable doubt as to the defendant's guilt remains. *Cole*, 193 Ill. App. 3d at 995, 550 N.E.2d at 727.

■ In the instant case, one of defendant's neighbors, Schlattman, testified that he heard P.E.P. asking to leave and screaming for help. Officer Rash stated that when he arrived at defendant's apartment, he also heard P.E.P. screaming for help. He then indicated that defendant looked out the window, but did not open the door as requested, requiring the officers to kick defendant's door open. Officers Rash and Ripsch both testified that when they entered defendant's apartment, defendant was wearing only undershorts and P.E.P. was wearing only a shirt. Further, the officers testified that P.E.P. was bruised and photographs of these bruises were introduced into evidence. Officer Provanzano stated that he found buttons from P.E.P.'s shirt on the floor near the bed. Moreover, defendant made three statements after his arrest, which the jury could find as acknowledging that a sexual assault had occurred, but indicating that defendant could not understand how he could be arrested because the incident happened in his apartment.

Because the evidence presented against defendant at trial is overwhelming, we find the State proved defendant guilty beyond a reasonable doubt.

### B. VARIANCE FROM INDICTMENT

The second issue defendant raises is whether he was denied a fair trial because his indictment charged that he "by the use of force *** caused bruising," contrary to both the jury instructions and the State's closing argument wherein the jury was told to convict the defendant upon a finding that he "by the use of force or the threat of force" caused any "physical harm" during the offense.

■ At trial, defendant did not object either to the instructions or to the State's closing argument, nor did defendant raise the variance issue in a written post-trial motion. Errors contained in jury instructions are waived if not objected to at trial. (*People v. Maberry* (1990), 193 Ill. App. 3d 250, 265, 549 N.E.2d 974, 984.) Additionally, issues are waived for purposes of appeal if not objected to both at trial and in a written post-trial motion unless plain error is involved. (*People v. Enoch* (1988), 122 Ill. 2d 176, 190, 522 N.E.2d 1124, 1131-32.) Thus, we find defendant has technically waived this issue.

■ Having determined that this variance issue has been waived,

we have considered whether the claimed error is plain error, affecting substantial rights, that may be noticed on appeal. (107 Ill. 2d R. 615(a).) We have done so in accordance with the criteria recently provided by the supreme court in *People v. Herrett* (1990), 137 Ill. 2d 195. Because we are unsure that *any* error occurred, we find that invocation of the plain error rule is hardly necessary "to preserve the integrity of the judicial process and provide a fair trial." *Herrett*, 137 Ill. 2d at 210.

### C. DENIAL OF JURY INSTRUCTION ON LESSER INCLUDED OFFENSE

Defendant's third contention on appeal involves the trial court's denial of his proffered instruction on the lesser included offense of criminal sexual assault. He argues that because the jury could have found him guilty of the lesser included offense of criminal sexual assault if the jury found the State had not proved bodily harm to P.E.P., it was reversible error for the court to refuse to give that instruction.

■ When the record contains evidence which, if believed by the jury, would reduce the crime to a lesser included offense, the trial court should instruct the jury on that lesser included offense. (*People v. Fonville* (1987), 158 Ill. App. 3d 676, 685, 511 N.E.2d 1255, 1262.) However, in *People v. Williams* (1989), 191 Ill. App. 3d 269, 274, 547 N.E.2d 608, 612, this court stated the following:

> "A defendant's instruction on the lesser offense is appropriate when the evidence would permit a jury rationally to find him guilty of the less serious offense and not guilty of the more serious offense. Therefore, the evidence in a particular case might preclude use of an instruction on the lesser offense."

■ In the instant case, we find there was no basis on which a rational jury could conclude that there was no bodily harm to the victim. (See *People v. Bryant* (1986), 113 Ill. 2d 497, 507, 499 N.E.2d 413, 417-18.) The victim testified that she was injured by defendant and her injury was corroborated by others. The court did not err in refusing defendant's instruction on criminal sexual assault.

### D. THE STATE'S CLOSING ARGUMENT

#### 1. ALLEGEDLY IMPROPER REMARKS

During closing argument, the State argued the following:

> "Based on that, folks, I submit that we have proven our case beyond a reasonable doubt. But we have got just a little bit more, don't we? Because what did he say at that booking room? It can't be criminal assault—sexual assault if it took place in my

apartment. Now goodness gracious, folks, he didn't say it can't be criminal sexual assault because we didn't have any sex. It can't be criminal sexual assault because she was not getting out of my apartment when I wanted her to. Isn't that tantamount to a full written confession?''

During rebuttal, the prosecutor argued:

"Ladies and gentlemen, probably most crucially, why did he say, it can't be a sexual assault if it is in my apartment? I submit to you folks that when he said that, he confessed.''

In addition, the State argued:

"Mrs. Davis says that there is no evidence of any penetration of her by his penis, and that is true. There was no evidence of that. But I do submit to you, ladies and gentlemen, that the evidence is clear that the act of sexual penetration was occurring when the squad car lights and those flashlights began shining through the window. I submit that this act of sexual penetration was the precursor of others, and it is only the intervention of the police catching him red-handed if you will that resulted in these charges.''

We find the above statements to be within the bounds of proper closing argument, consisting of nothing more than a reasonable characterization of the evidence and reasonable inferences drawn therefrom. See *People v. Collins* (1985), 106 Ill. 2d 237, 277-78, 478 N.E.2d 267, 285.

Additionally, we note that defense counsel did not object to these remarks at the time of closing argument nor in his written post-trial motion. Therefore, this argument on appeal is waived.

## 2. DEFINING REASONABLE DOUBT

Defendant next argues the State improperly defined the reasonable doubt standard for the jury during its closing argument. The statements in question are the following:

"Finally, ladies and gentlemen, Judge Dearborn is going to instruct you on the burden of proof in this case. We have to prove our case beyond a reasonable doubt. That is the standard. We talked about it earlier. I submit to you folks that the operative word in that instruction is reasonable. Now I am not going to try to tell you what reasonable means, that is for you to decide. *But I submit to you folks that we only have to prove the case beyond a doubt which makes sense, which has some reason compared with all the other evidence.* Again, a little common sense, folks. *We don't have to exclude every doubt, any farfetched*

*doubt. Only reasonableness."* (Emphasis added.)

■ The State's comments regarding reasonable doubt that we have emphasized were improper. Neither the court nor counsel should attempt to define the reasonable doubt standard for the jury. (*People v. Ellis* (1985), 134 Ill. App. 3d 924, 926, 481 N.E.2d 320, 322; *People v. Eddington* (1984), 129 Ill. App. 3d 745, 780, 473 N.E.2d 103, 127.) However, "[e]ven comments that may be said to be improper do not constitute reversible error unless they result in substantial prejudice." (*Collins*, 106 Ill. 2d at 276, 478 N.E.2d at 284.) Given the overwhelming nature of the evidence against defendant and the rather mild nature of the impropriety (we note that no objection to these remarks was ever raised), we find no substantial prejudice to have been caused.

### E. EFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that he was denied the effective assistance of counsel when his attorney conceded at closing argument that defendant caused bodily harm to his victim. Specifically, defense counsel stated the following:

"There is another thing that I think is significant before we get into specifics, and that is this. As an Assistant State's Attorney myself for some years, I am very familiar with the fact that the assistant who files the case or the State's Attorney who files the case has the option of choosing the appropriate charge. And how you do that is you sift through the evidence, you look at the police reports, you look at the physical evidence that is there, and you decide what is the charge that we are going file here or are we going to file one. And you look at everything there. Before the case ever goes to the Grand Jury, that decision is made. And I want to submit to you that in this case, the wrong charge was filed, the wrong charge was brought—.

[Prosecutor]: Judge, I am going to object to this as improper and beyond the scope of the case.

THE COURT: Overruled at this point.

[Defense counsel]: And that what should have been brought in this case is a case of battery. There is no question in this case that my client committed a battery against [P.E.P.]. He is not contesting it. It is not an issue in the case. There is ample testimony about it. There is testimony about his hands around her neck. There is testimony about screaming, there is testimony about fear. There is testimony, all of it going to a battery, and that would have been the particularly appropriate charge. But you are not hearing evidence today on a battery case. It is not a

battery case, it is a sex case; and that is what you have to consider here today. I will not try to mislead you, there are elements of force in the sex case itself, and that is why it is very complicated and why you have to think very carefully when you do your deliberations in this case, because one of the elements in addition to sexual penetration is by force or use of force, and another element in aggravated criminal sexual assault is causing bodily harm of some sort or another. So that it looks really neat, it looks like—well look at the State's case, we have by force or use of force for one thing, we know that. And we probably have some kind of bodily harm, because she testified that these were marks on her neck even though she didn't seek any medical treatment or ask for any hospitalization or any medical care of any sort, even though it was offered, she didn't want that. There may have been some bodily harm. But was there sexual penetration? That is the crux of this case, ladies and gentlemen. And I submit to you that any evidence of that is patently unbelievable, and there are reasons why I believe that and they are in the evidence."

■■■ The standard for establishing ineffective assistance of counsel was set out in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, where the United States Supreme Court announced that a defendant must first show that his counsel's performance was deficient, and second, he must show that this deficiency prejudiced him so that but for counsel's unprofessional errors, the result of the proceeding would probably have been different.

■■■ Applying the first requirement in *Strickland*, we find that defense counsel's remarks during closing argument were not deficient, but merely strategic. The State presented uncontradicted evidence at trial that the victim was bruised and that the defendant used force upon her. Earlier in this opinion, we observed that this evidence was so strong, there was no basis on which a rational jury could conclude there was no injury to the victim.

At closing argument, defense counsel made a tactical decision to acknowledge the strength of the evidence showing force and injury, focusing the jury's attention instead on the element of penetration. Defense counsel was, in essence, trying to highlight for the jury counsel's claim that there was no sexual penetration, that the State brought the wrong charge against defendant, and that the defendant should therefore be acquitted. This strategy is sometimes successful. Here it was not. However, errors in judgment or trial strategy do not establish incompetency of counsel for the purpose of determining whether defend-

ant has been denied the effective assistance of counsel. *People v. Eddmonds* (1984), 101 Ill. 2d 44, 70, 461 N.E.2d 347, 360.

With regard to the second requirement set forth in *Strickland*, it also has not been met by defendant. Considering the strength of the State's case, we conclude that there is close to zero probability that but for defense counsel's concessions, the outcome would have been different.

Accordingly, for the foregoing reasons, the judgment and sentence of the circuit court of Sangamon County are affirmed.

Affirmed.

SPITZ and GREEN, JJ., concur.