(No. 76424.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CARL BURPO, Appellee.

*Opinion filed February 17, 1995.—Rehearing denied April 3, 1995.*

262

FREEMAN, J., concurring.
HARRISON, J., dissenting.

Roland W. Burris, Attorney General, of Springfield, and Robert B. Haida, State's Attorney, of Belleville (Rosalyn B. Kaplan, Solicitor General, and Arleen C. Anderson and Michael A. Hurst, Assistant Attorneys General, of Chicago, of counsel), for the People.

Clyde L. Kuehn, of Kuehn & Trentman, of Belleville, and Joseph R. Brown, Jr., of Lucco, Brown & Mudge, of Edwardsville, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

A St. Clair County grand jury indicted Carl Burpo, a medical doctor, for various sex offenses, including eight counts of criminal sexual assault in violation of section 12—13(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 12—13(a)(2)). The eight criminal sexual

assault counts arose from conduct that occurred while Dr. Burpo was performing gynecological examinations. Dr. Burpo moved to dismiss the charges, claiming that the legislative scheme which defines the offense, and the medical examination exception to it, make the statute void for vagueness. The circuit court granted Dr. Burpo's motion to dismiss, declaring the statutory scheme to be unconstitutionally vague as to the class of persons performing gynecologic exams, including this defendant. The State now appeals. (134 Ill. 2d R. 603.) We reverse.

We first address the State's contention that defendant does not have standing. According to the State, defendant's arguments are based on hypothetical applications of the statute to punish innocent conduct for which defendant was not charged. Defendant's mere status as a gynecologist, the State contends, does not confer upon him the standing to challenge the statute on its face where the statute is capable of a valid application to him.

The State's contention is wrong. The defendant does not contest the constitutionality of the statute as a mere disinterested gynecologist who is concerned about the potential application of the statute. Rather, defendant contests the validity of a statute which has criminalized certain actions he took during several gynecological examinations. The facts of the case against the defendant directly implicate what he claims to be the statute's constitutional infirmity, that the standards set forth in the statute are unconstitutionally vague as applied to him.

The statute provides that an accused commits criminal sexual assault if he commits an act of sexual penetration and the accused knew that the victim was unable to understand the nature of the act or was unable to give knowing consent. It then sets forth an exception or exemption to the offense of aggravated criminal

sexual assault: "Any medical examination or procedure which is conducted by a physician, nurse, medical or hospital personnel, parent, or caretaker for purposes of and in a manner consistent with reasonable medical standards is not an offense ***." Ill. Rev. Stat. 1991, ch. 38, par. 12—18(b).

Long-accepted standards of statutory construction mandate that statutes are entitled to a presumption of constitutionality with the burden of establishing a constitutional violation resting upon the party challenging the statute. Moreover, if construction of a statute is doubtful, the doubt should be decided in favor of the law's validity. There is a further overriding principle of statutory construction that the court should ascertain and give effect to the intent of the legislature.

At the outset, it is important to establish what the State must prove in prosecuting a gynecologist under the statute. The defendant suggests that a physician commits acts which constitute criminal sexual assault in every gynecological examination he performs. Therefore, the defendant contends, once the physician is indicted for the crime of sexual assault, the burden impermissibly shifts to the physician to establish by a preponderance of the evidence that he is entitled to the statutory medical exemption.

The defendant's construction of the statute is flawed. Under the statute, the prosecution must prove not only the act of sexual penetration but also that the defendant knew that the patient did not consent. The State contends, and we agree, that there is substantial interplay between the two sections. Specifically, subsumed within the sexual assault statute is the premise that the patient would only consent to an examination which was conducted pursuant to reasonable medical standards. When a gynecologist intentionally exceeds the scope of reasonable medical standards, the patient's

consent is vitiated, and the physician may be prosecuted under the sexual assault statute. Therefore, the burden is on the State to establish beyond a reasonable doubt what the reasonable medical standards were, that the physician intentionally transgressed those standards, and that the patient did not consent to the transgressions.

The defendant's assertion that mere negligence can subject a gynecologist to prosecution for criminal sexual assault is baseless. The physician's good faith will protect him from criminal sanctions. In *People v. Terrell* (1989), 132 Ill. 2d 178, 207, the court found that the legislature eliminated acts of sexual penetration with innocent intentions from the purview of the aggravated criminal sexual assault statute. Consistent with the holding in *Terrell*, we find that, in prosecuting a gynecologist under the sexual assault statute, the State must prove that the gynecologist possessed a mental state of intent, knowledge, or recklessness.

Thus, gynecologists are not implicated under the sexual assault statute simply because they perform invasive physical examinations. The State bears the burden of proof, and the defendant may attempt to avail himself of the exception by either rebutting the State's evidence regarding reasonable medical standards, rebutting the State's evidence concerning his mental state, or rebutting the State's evidence concerning the patient's consent.

Since determining the scope of consent in applying the sexual assault statute to gynecologists implicates the reasonable medical standards language in the exception to the statute, we next address the defendant's contention that the reasonable medical standards language implicated by the sexual assault statute is unconstitutionally vague.

A statute is said to violate due process under either

the United States Constitution or the Illinois Constitution on the basis of vagueness only if its terms are so ill-defined that the ultimate decision as to its meaning rests on the opinions and whims of the trier of fact rather than any objective criteria or facts. (*People v. Pembrock* (1976), 62 Ill. 2d 317, 322.) A statute will be considered unconstitutionally vague on its face only where it is incapable of any valid application in the sense that no standard of conduct is specified at all. (*People v. Haywood* (1987), 118 Ill. 2d 263, 270, quoting *Coates v. City of Cincinnati* (1971), 402 U.S. 611, 614, 29 L. Ed. 2d 214, 217, 91 S. Ct. 1686, 1688.) Further, due process requires that a statute must not be so vague that men of common intelligence must necessarily guess at its application or meaning. (*People v. Fabing* (1991), 143 Ill. 2d 48, 53.) Applying these principles to the present case, we find that the statute is sufficiently clear.

Criminal acts cannot always be defined with absolute precision. Laws criminalizing obscenity, for instance, are framed in general terms. However, they have withstood constitutional scrutiny. (See *People v. Ridens* (1974), 59 Ill. 2d 362.) Obscenity laws are necessarily flexible because they are based upon community standards which vary from place to place and may change over time.

Similarly, in civil medical malpractice actions, the testimony of experts is needed to establish the applicable standard of care. Medical standards are not amenable to precise and explicit statutory codification. This court has previously observed that medicine is not an exact science. It is rather a profession which involves the exercise of individual judgment within the framework of established procedures. Differences in opinion are consistent with the exercise of due care. *Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 261.

Therefore, the legislative use of the term "reason-

able medical standards" is sufficient. Common sense must play a role in the construction of statutes. As this court observed in *Haywood*:

"It cannot be presumed that the General Assembly, in legislating, intended obscurity, or 'to override common sense.' [Citations.] Furthermore, the defendants' interpretation is inconsistent with established principles of statutory construction. The statute should be given a construction that is consistent with the purposes and policies of the statute." *Haywood*, 118 Ill. 2d at 270.

Accordingly, we hold that the statutory scheme under consideration is constitutional. The judgment of the circuit court of St. Clair County dismissing the criminal sexual assault counts against the defendant is therefore reversed. The cause is remanded to the circuit court for further proceedings.

*Reversed and remanded.*

JUSTICE FREEMAN, concurring:

I agree with the majority that defendant has standing to challenge the constitutionality of the legislative scheme and that the scheme is also constitutionally sound. I take issue, however, with the majority's construction of the scheme's individual provisions and the interplay between these two. I construe the provisions differently in keeping with rules of statutory construction and the obvious underlying legislative intent.

The trial court found disturbing the absence of a culpable mental state requirement in the aggravated criminal sexual assault statute, section 12—13(a)(2), and its medical examination exemption, section 12—18(b), as applied to gynecologists. This was because gynecologists commit acts of sexual penetration during routine vaginal examinations, thereby satisfying most of the statute's elements, including that of the mental state of nonspecific intent. (See *People v. Terrell* (1989), 132 Ill.

2d 178 (a mental state of either intent or knowledge implicitly is required for sexual penetration to occur).) According to the trial court and defendant, criminally charged gynecologists then impermissibly bear the burden of proving their innocence in that their conduct was within the medical examination exemption, *i.e.*, that the examination was for "purposes and in a manner consistent with reasonable medical standards."

According to the trial court and defendant, the exemption, in operation with the sexual assault statute, as applied to persons performing gynecologic exams, is unconstitutionally vague. The scheme is allegedly unconstitutionally vague because it fails to clearly define the boundaries of criminal conduct for gynecologists performing vaginal examinations. According to defendant, the exemption's phrase "consistent with reasonable medical standards" is not a sufficient standard in the absence of any requirement of an unlawful purpose.

Responding to defendant's suggestion that a physician's act in performing a vaginal examination constitutes the conduct of a criminal sexual assault under the statute, the majority unnecessarily and unwarrantedly forges an additional and unclear mental state element into the criminal sexual assault statute. "When the defendant gynecologist *intentionally exceeds the scope of reasonable medical standards,* the patient's consent is vitiated, and the physician may be prosecuted under the sexual assault statute." (Emphasis added.) (164 Ill. 2d at 264-65.) Thus, according to the majority's reasoning, a negligent examination could not subject a physician to prosecution for criminal sexual assault, because "[c]onsistent with the holding in *Terrell,* we find that *** the State must prove that the gynecologist *possessed a mental state of intent,* knowledge, or recklessness." (Emphasis added.) 164 Ill. 2d at 265.

Thus, by this construction, the aggravated criminal sexual assault statute, as applied to physicians conducting vaginal examinations, now appears to possess both the general intent requirement (see *Terrell*, 132 Ill. 2d at 209 (proof of an intentional or knowing act by the accused)) and this particular specific intent requirement (proof of the accused's intent to exceed the scope of reasonable medical standards). (*Cf. People v. Williams* (1989), 191 Ill. App. 3d 269, 275 (criminal sexual assault is a general intent offense).) I believe that inclusion within the statute of this particular specific intent element, applicable to this class of accuseds, offers no assistance to the clarity of the statutory scheme, nor is it warranted.

The majority is correct to point out that the defendant's interpretation of the statute is "flawed," as it fails to consider all of the statute's elements, especially that directed to the victim's consent. (164 Ill. 2d at 264 ("[u]nder the statute, the prosecution must prove not only the act of sexual penetration but also that the defendant knew that the patient did not consent").) A prosecution of an accused under section 12—13(a)(2) must prove both the accused's intentional act of penetration *and* knowledge of the victim's inability to give knowing consent. The fact that the prosecution must also prove that the accused knew the victim could not consent refutes defendant's argument that a physician's performance of merely innocent or negligent acts will subject him to prosecution. Intentional conduct alone is not sufficient; an element speaking to unlawful purpose is required under the statute.

But in prosecuting a physician who performs vaginal examinations, this court need not override or ignore these express statutory elements. If a female patient is undergoing a vaginal examination to which she has consented, and the examining physician performs it in

a manner which suggests that it is not a legitimate medical examination, she is unable, at that point in time and space, to give any knowing consent. And the examining physician knows she was unable to do so because he did not give her advance warning, or an opportunity to consent, and the deed was swiftly done. Thus, under the express terms of the statute, to prosecute a physician who performed a vaginal examination, an intentional act of sexual penetration is required, as well as indication that the physician knew of the victim's inability to consent. (See *People v. Quinlan* (1992), 231 Ill. App. 3d 21, 25 (evidence that victim not equipped to know defendant's acts were not medical procedure, that acts were not medical procedure proved victim unable to understand nature of the acts, and other evidence proved defendant knew).) There is no need to deviate from these expressly stated statutory elements by judicially crafting an additional statutory element.

Furthermore, the particular specific intent element advanced by the majority ultimately turns on a medical reasonableness standard (intent to exceed reasonable medical standards) and lends no additional clarity to the parameters of criminal conduct under the scheme than that already provided by the exemption. In short, it is no more clear than the exemption itself.

More importantly, the introduction of this element within the statute itself also unnecessarily increases the State's burden of proof. The majority's construction essentially inverts the language of the medical examination exemption by changing what was described there as an examination conducted "consistent" with reasonable medical standards to the intentional "exceed[ing]" of reasonable medical standards. Thus a factor the legislature clearly intended as comprising the exemption to the statute becomes, under the majority's construction, also an element of the crime, itself.

"Therefore, the burden is on the State to establish beyond a reasonable doubt what the reasonable medical standards were, that the physician intentionally transgressed those standards, and that the patient did not consent to the transgressions." (164 Ill. 2d at 265. *Cf. People v. Ikpoh* (1993), 242 Ill. App. 3d 365, 383-84 (holding defendant bears burden of proof on issue of whether procedure was medical procedure and entitled to medical examination exemption from sexual abuse prosecution); *People v. Foster* (1990), 195 Ill. App. 3d 926, 952 (holding that proof that defendant's acts were not reasonable medical examination is not an element of criminal sexual assault).) Thus, the majority's construction unnecessarily increases the burden of proof on the State since it is the State's burden to prove the elements of the crime beyond a reasonable doubt, and it is the defendant's burden to prove his entitlement to a statutory exemption by a preponderance of the evidence. The State is simply not required to negate an exemption. See *People v. Smith* (1978), 71 Ill. 2d 95, 105-09.

I agree with the majority and the State that there is substantial interplay between the statute and the exemption. Either party may raise the exemption and present evidence showing whether the acts were done in a manner consistent with reasonable medical standards (see *People v. Delk* (1981), 96 Ill. App. 3d 891, 902) and some of this evidence may also go to whether the physician knew of the victim's inabilities to understand or give consent. However, I do not believe that it is helpful to blur the distinctions between the two provisions or their accepted operations for the sake of upholding the scheme. The scheme is constitutionally sound without such construction.

As mentioned previously, to prosecute a physician under the statute there must be more than a mere intentional vaginal examination. Under the statute,

every gynecologist conducting vaginal examinations does not fall within the purview of the sexual assault statute. The physician must evidence an awareness that the victim was unable to understand or give consent. If charges are brought, the physician or the State may raise the medical examination exemption and present evidence that the examination was or was not conducted for "purposes" consistent with reasonable medical standards and accomplished in a like manner. (See *Terrell*, 132 Ill. 2d at 211 ("the legislature \*\*\* eliminate[d] acts of 'sexual penetration' with innocent intentions from the purview of the aggravated criminal sexual assault statute when it enacted [the exemption]").) Under these circumstances, a reasonableness standard, which suffices to define behavior in other areas of law, is not so amorphous as to render the scheme unconstitutionally vague.

JUSTICE HARRISON, dissenting:

Section 12—13(a)(2) of the Criminal Code of 1961 provides that an accused commits criminal sexual assault if he or she "commits an act of sexual penetration and the accused knew that the victim was unable to understand the nature of the act or was unable to give knowing consent." (Ill. Rev. Stat. 1991, ch. 38, par. 12—13(a)(2).) This provision is qualified by section 12—18(b) of the Code, which states that "[a]ny medical examination or procedure which is conducted by a physician, nurse, medical or hospital personnel, parent, or caretaker for purposes and in a manner consistent with reasonable medical standards is not an offense" within the meaning of section 12—13 or related provisions. Ill. Rev. Stat. 1991, ch. 38, par. 12—18(b).

There is no dispute that Dr. Burpo committed acts of "sexual penetration" within the meaning of section 12—13(a)(2) when he examined the eight complaining witnesses involved here. He had to in order to do his job

as a gynecologist. According to expert testimony presented at the hearing on the motion to dismiss, penetration is unavoidable during the course of a proper vaginal examination. To perform the exam, a doctor must insert his fingers, and sometimes an instrument known as a speculum, into the vagina.

Just as there is no dispute about the fact of sexual penetration, there is no dispute that all eight of the complaining witnesses consented to the examinations. One of the women received her exam on a follow-up visit after an abortion. A second was required by her insurance company to obtain a second opinion before she could have a hysterectomy, while a third was examined in order to get a prescription for birth control pills. How the other five came to see Dr. Burpo is not disclosed in the record, but the State does not contend that the circumstances surrounding their exams were anything but routine and proper.

In pursuing criminal sexual assault charges against Dr. Burpo, the State bases its case on the proposition that certain acts allegedly performed by Dr. Burpo in the course of his examinations had no "legitimate" medical purpose. The State's theory appears to be that the lack of medical "legitimacy" in Burpo's conduct is relevant to show that the consent initially given to the examinations was defeated. The State seems to assert that when the complaining witnesses consented to the exams, they expected that only "legitimate" procedures would be performed on them. To the extent that aspects of Dr. Burpo's examination were not "legitimate," they were unexpected, and the complaining witnesses were therefore "unable to give knowing consent" within the meaning of section 12—13(a)(2).

The State's approach has origins in precedent decided under the old rape laws, where force was implied "when the rape or deviate sexual acts proscribed

by statute [were] accomplished under the pretext of medical treatment when the victim [was] surprised, and unaware of the intention involved." (*People v. Borak* (1973), 13 Ill. App. 3d 815, 820-21.) The idea was that if the complaining witness was surprised by the act and unaware of the assailant's intentions, she could not have given consent, and the act was therefore deemed to have been made with force. See *Borak,* 13 Ill. App. 3d at 821.

Force is clearly not an element of the offense under section 12—13(a)(2). Nevertheless, similar reasoning has been followed in applying that statute where, as here, the State charges that the complaining witness was "unable to give knowing consent." Although the statutory requirement that a victim be "unable to give knowing consent" would appear to be aimed at situations where the victim was asleep, unconscious, or suffering from some substantial mental impairment, the appellate court has extended it to also embrace situations where a medical professional tricked the complaining witness into submitting to sexual penetration on the ruse that it was part of a "legitimate" medical test when it was not. (See *People v. Quinlan* (1992), 231 Ill. App. 3d 21.) This is the standard the State would have us follow here.

Once medical "legitimacy" becomes the touchstone of a doctor's criminal liability, as the State argues it should be, the question of whether a doctor's conduct comports with "reasonable medical standards" within the meaning of section 12—18(b) becomes dispositive. In the State's own words,

"Evidence of the physician's compliance or noncompliance with reasonable medical standards is the only way in which a fact finder can determine whether the physician's conduct was good faith medical treatment or aggravated criminal sexual assault."

Sections 12—13(a)(2) and 12—18(b) are thus inextricable under the State's theory. If, under the evidence, an examination or procedure involving sexual penetration is

not "consistent with reasonable medical standards" within the meaning of section 12—18(b), it cannot be regarded as "legitimate" and will therefore subject the defendant to conviction for violation of section 12—13(a)(2).

In the proceedings before the circuit court, Dr. Burpo argued and the court found that the legislative scheme created by the interplay of sections 12—13(a)(2) and 12—18(b) is void and unenforceable "as to the class of persons performing gynecologic exams including this Defendant" because the phrase "consistent with reasonable medical standards" is unconstitutionally vague. I agree.

The void-for-vagueness doctrine requires that a penal statute define the criminal offense (1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement. (*Kolender v. Lawson* (1983), 461 U.S. 352, 357, 75 L. Ed. 2d 903, 909, 103 S. Ct. 1855, 1858.) Although the doctrine focuses on both actual notice to citizens and arbitrary enforcement, the United States Supreme Court has recognized that the more important aspect of the vagueness doctrine

" 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.' [Citation.] Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.' " *Kolender*, 461 U.S. at 359, 75 L. Ed. 2d at 909, 103 S. Ct. at 1858, quoting *Smith v. Goguen* (1974), 415 U.S. 566, 574-75, 39 L. Ed. 2d 605, 613, 94 S. Ct. 1242, 1248.

Vagueness challenges to statutes that do not involve first amendment freedoms must be examined in light of the facts of the case at hand. Normally, a facial vagueness challenge will be upheld only if the statute is

impermissibly vague in all of its applications. (*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 495, 71 L. Ed. 2d 362, 369, 102 S. Ct. 1186, 1191.) The United States Supreme Court has also recognized, however, that the standard of precision required of a statute is higher where, as here, the statute imposes criminal penalties. That consideration has, at times, led the court "to invalidate a criminal statute on its face even when it could conceivably have had some valid application." *Kolender,* 461 U.S. at 359 n.8, 75 L. Ed. 2d at 910 n.8, 103 S. Ct. at 1859 n.8.

A criminal statute is facially invalid where it vests in the police virtually complete discretion to determine whether the terms of the statute have been satisfied. (See *Kolander,* 461 U.S. 352, 75 L. Ed. 2d 903, 103 S. Ct. 1855.) In addition, this court has declared that a legislative enactment is void where its language appears on its face to have meaning, but where that language cannot possibly be given any precise meaning or intelligent application in the circumstances under which it is intended to operate. *Granite City Division of National Steel Co. v. Illinois Pollution Control Board* (1993), 155 Ill. 2d 149, 163-64; *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.* (1987), 118 Ill. 2d 389, 402.

Here, the statutory language "consistent with reasonable medical standards" is one of those phrases that appears to have a clearly ascertainable meaning, but, in this context, does not. This is not a situation where a doctor took advantage of the circumstances to have intercourse with his patients. All eight of the criminal sexual assault charges against Dr. Burpo arose from complaints regarding the manner in which he performed what were otherwise entirely routine internal exams.

Performing internal medical exams on female patients is a procedure subject to many variables. Techniques differ from doctor to doctor and from place

to place. Expert testimony adduced in the trial court indicated that there is considerable variation in standards from one community to the next. Depending on the specific problems involved, a gynecologist in Chicago could be judged differently, in terms of "reasonable medical standards," from a gynecologist in Hillsboro. In addition, there can be disagreement on whether a gynecologist acted properly even among experts applying the same standards. For example, one of the instances of alleged misconduct by Burpo involved the length of time a vaginal examination took. A doctor called by the State during the grand jury proceedings opined that an internal exam would take about three minutes. The defense expert, however, stated that there was no average time for such an exam. In his words,

> "it would be a terrible mistake to say it should be performed in three minutes or five minutes or seven minutes or nine minutes because it eliminates all of the variables that go into the exam."

In light of such profound disagreements, it is difficult to see how the statutory scheme before us could be construed as providing the clearly ascertainable standard of guilt that due process requires. The vagueness of the statutory standard is further compounded by the fact that the legislation subjects gynecologists to potential liability without regard to fault. (See *Colautti v. Franklin* (1979), 439 U.S. 379, 394, 58 L. Ed. 2d 596, 608, 99 S. Ct. 675, 685.) In a different context, this court has held that the statute does not punish "innocent" conduct in the sense that it requires an intentional or knowing act by the accused. (*People v. Terrell* (1989), 132 Ill. 2d 178, 209.) The problem in the case of gynecologists is that the "sexual penetration" that occurs in the course of a proper vaginal examination will always be knowing and intentional. When a doctor puts his fingers into the patient's vagina, he most certainly means to do

it. As previously discussed, it is an inherent and unavoidable part of the procedure.

Because the statute requires only intent or knowledge, and not any purpose of sexual gratification or arousal (*Terrell*, 132 Ill. 2d at 210-11), any deviation from "reasonable medical standards" in the course of an internal exam could subject a gynecologist to prosecution, even if the deviation was the result of negligence. With respect to this aspect of the practice of gynecology, medical malpractice would be criminalized. Whether the conduct was motivated by a criminal purpose or not, punishment could result.

The abuses that might follow at the hands of an over-zealous prosecutor are manifest. The situation is especially troubling when viewed in the context of the ongoing controversy over contraception and abortion rights. For a politically sensitive State's Attorney in a "pro-life" community, the threat of prosecution under sections 12—13(a)(2) and 12—18(b) could be a potent weapon in inhibiting the delivery of gynecological services to women who wish to exercise their constitutional right to reproductive freedom. While Dr. Burpo has refrained from charging the State's Attorney with such an improper purpose here, I cannot help but observe that at least some of the charges in this case arose from Dr. Burpo's work at a Planned Parenthood clinic.

The State is confident that common sense and fair play will prevail, but the validity of a law cannot be allowed to turn on the hope that prosecutors will have the wisdom and restraint to enforce it judiciously. As Justice Douglas reminded us more than 40 years ago, "It is not enough to know that the men applying the standard are honorable and devoted men. This is a government of *laws*, not of *men*." (Emphasis in original.) *Joint Anti-Fascist Refugee Committee v. McGrath* (1951), 341 U.S. 123, 177, 95 L. Ed. 817, 857, 71 S. Ct. 624, 651 (Douglas, J., concurring).

For the foregoing reasons, I would hold that the phrase "consistent with reasonable medical standards" renders the statutory scheme created by sections 12—13(a)(2) and 12—18(b) unconstitutionally vague and unenforceable in the context of internal exams performed by physicians on their female patients. The judgment of the circuit court of St. Clair County dismissing the criminal sexual assault counts against Dr. Burpo should therefore be affirmed.