THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRIAN TRIPLETT, a/k/a Brian Daniels, Defendant-Appellant.

First District (1st Division) No. 83—1765

Opinion filed December 2, 1985.

Steven Clark and K. L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Cuomo, and Brian S. Crowley, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINLAN delivered the opinion of the court:

Defendant, Brian Triplett, also known as Brian Daniels, was convicted of two counts each of home invasion, armed robbery, and aggravated battery. He was sentenced to 60 years for each home invasion conviction, 60 years for each armed robbery conviction, and 10 years for each aggravated battery conviction. The aggravated bat-

tery sentences were to be served concurrently with each other and the other sentences. The home invasion sentences were to be served concurrently with each other and consecutively with the armed robbery sentences. On appeal defendant argues: (1) one conviction for armed robbery was improper; (2) one conviction for home invasion was improper; (3) the two convictions for aggravated battery were improper; and (4) the sentences imposed were improper.

We affirm in part, vacate in part, and remand.

On January 4, 1982, Emma Mattis and Margaret Bernak, widowed sisters aged 77 and 72 respectively, lived alone together in a house at 5815 South Clarmont Street in Chicago. On that evening they noticed a man looking into their house through the living room window. Mrs. Bernak tried to call the police but the wires to the telephone had been cut from outside the house. Mrs. Mattis heard the front door rattling, and went to the door to try to keep it closed. The door sprang open pushing her against the wall and causing her to fall to the floor. Two men burst into the house. One man began to hit Mrs. Mattis on her head and shoulders while the other went into her sister's bedroom. Mrs. Mattis saw one of the men beating her sister with a doorjamb. She tried to stop the beating but was unsuccessful. She ran out of the house screaming for help. Some young men from the neighborhood came and began to chase the two men, who ran out of the house. Mrs. Bernak and Mrs. Mattis each testified that jewelry boxes belonging to Mrs. Bernak were taken but that no wallet, no cash, and nothing belonging to Mrs. Mattis, was taken. Mrs. Mattis and Mrs. Bernak were hospitalized for two and three weeks, respectively, for treatment of their injuries.

Carl Gilcrest testified he and the defendant committed the instant home invasion and robbery. Gilcrest had pleaded guilty to armed robbery, two counts of home invasion, and two counts of battery, with the understanding that the State would recommend a prison term of 30 years. Gilcrest testified that on January 4, 1982, he and defendant planned to steal a car but Gilcrest lost the screwdriver with which they planned to break into it. Defendant then suggested they commit a burglary, and pointed out the victims' house. It was the defendant that ripped the telephone wires out of the back of the house, pulled open the screen door, and kicked in the front door. Gilcrest stated he saw defendant strike the woman at the door three times. He admitted that he then picked up a doorjamb, which had broken off, and began to beat one of the women to keep her quiet. Gilcrest testified that the defendant did not hit either woman with the piece of wood. Gilcrest said he became frightened and ran out of

the house and defendant followed him carrying jewelry boxes. Sometime after the robbery, defendant told Gilcrest that he, defendant, got $150 in cash from the robbery. Gilcrest never saw the cash and never received any proceeds from the robbery.

After his arrest, defendant made a statement to an assistant State's Attorney in which he admitted committing the instant robbery and home invasion with Gilcrest. In the statement, he claimed Gilcrest had suggested the crime after their plan to steal a car was foiled when Gilcrest lost a screwdriver and he also denied that he beat either of the victims. In fact, defendant stated he tried to stop Gilcrest from beating Mrs. Bernak with the stick. He said he ran out of the house carrying a jewelry box and wallet while Gilcrest was still beating one of the women with the wooden stick. As he was being chased by the victims' neighbors, defendant dropped both the jewelry box and the wallet.

■■ First, defendant argues he was improperly convicted of armed robbery against Mrs. Mattis because there was insufficient evidence that anything was taken from Mrs. Mattis. We agree.

In *People v. Gaines* (1981), 88 Ill. 2d 342, 430 N.E.2d 1046, the defendant held a gun and told two men "this is a stickup." The evidence indicated that only one victim relinquished property to the defendant. The supreme court reversed the robbery conviction of the second man. The court stated, "[t]here is no evidence whatever that the defendant took anything of value from Davis. We therefore agree that the conviction of the defendant of the armed robbery of Davis must be reversed." (88 Ill. 2d 342, 368.) The State responds that there is evidence that cash was taken from the house.

However, this court in *People v. Robinson* (1981), 92 Ill. App. 3d 397, 416 N.E.2d 65, reversed a robbery conviction even though there was some testimony that cash was taken from all of the people present. We stated, "We believe it would be unreasonable to determine that the vague generalities stated by [one of the witnesses] in describing the crime merit greater credibility than the testimony of the victim herself, which is quite specific, as well as the conforming testimony of another victim of the robbery, also quite specific." 92 Ill. App. 3d 397, 399.

Similarly in the case at bar, the only indication that anything of value may have been taken from Mrs. Mattis was based on the hearsay testimony of Gilcrest and an assistant State's Attorney regarding alleged statements of the defendant that a wallet and/or cash was taken from the house. We do not believe that these statements prove defendant's guilt beyond a reasonable doubt of the armed rob-

bery of Mrs. Mattis. This is especially true where here both victims testified specifically that nothing of value belonging to Mrs. Mattis was taken.

■ Although we reverse defendant's conviction for armed robbery against Mrs. Mattis, we do not find persuasive defendant's argument that he is entitled to a new trial because the trial court's failure to grant him a directed verdict on the robbery against Mrs. Mattis prejudiced defendant regarding the other offenses charged. We believe the evidence regarding the home invasion, robbery and batteries was overwhelming. That evidence included the confession of defendant as well as the testimony of his accomplice, Gilcrest. Thus, we are convinced, on the basis of the record here, that the failure of the trial court to direct a not-guilty verdict for defendant on the robbery of Mrs. Mattis did not taint the other convictions. See *People v. Johnson* (1981), 102 Ill. App. 3d 122, 429 N.E.2d 905.

■ The State, on the other hand, argues that if we determine that the armed robbery conviction against Mrs. Mattis is improper we should reduce the offense to attempted armed robbery. The State relies on *People v. Robinson* (1981), 92 Ill. App. 3d 397, 416 N.E.2d 65. There we vacated a conviction for armed robbery because there was insufficient evidence that property was taken from one of the alleged victims, but, because the person was searched by the defendant, we held the defendant took an independent and substantial step toward committing an armed robbery, and, thus, we modified the conviction to attempted armed robbery. In the case at bar, the only steps in furtherance of the armed robbery against Mrs. Mattis were the very bases for the conviction of the armed robbery of Mrs. Bernak; therefore, we cannot use the same act to carve out separate convictions. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) Accordingly, we cannot here sustain a conviction for attempted armed robbery against Mrs. Mattis.

■ Next, defendant argues, and the State concedes, that because defendant committed only a single illegal entry into the home of the victims, he can be convicted of only one count of home invasion. (See *People v. Ammons* (1983), 120 Ill. App. 3d 855, 458 N.E.2d 1031.) Therefore, we vacate one of the defendant's convictions for home invasion.

Next, defendant contends that the convictions for aggravated battery must be vacated because the injuries alleged in support of the battery convictions constituted the same injuries alleged in the home invasion. Defendant asserts that the indictments for home invasion and aggravated battery are predicated on the infliction of

"great bodily harm." Defendant contends that is not proper and relies on *People v. Bitner* (1980), 89 Ill. App. 3d 1106, 412 N.E.2d 721, where the court held that the defendant could not be convicted of both battery and home invasion because "in [that] case battery [was] a lesser included offense of home invasion ***." 89 Ill. App. 3d 1106, 1113.

However, in *People v. Tate* (1982), 106 Ill. App. 3d 774, 436 N.E.2d 272, we held that concurrent convictions for aggravated battery and home invasion could be proper. We stated:

> "The aggravated battery involved here contained the element of the infliction of 'great bodily harm' (Ill. Rev. Stat. 1979, ch. 38, par. 12—4) while the home invasion required only the infliction of 'injury' (Ill. Rev. Stat. 1979, ch. 38, par. 12—11(a)). Entry of a home was an element of the home invasion while no such entry was a required element of the aggravated battery. Clearly, neither offense was an included offense of the other.
>
> Whether both offenses were 'carved' from the same act presents a somewhat more complicated question. The aggravated battery arose from the knifing of Irshell Rife, husband of Lettie Rife. Under the allegations of the information and the evidence, the wound he received thereby was the bodily harm received in the aggravated battery and the injury received in the home invasion. The evidence indicated the knifing was a single act. However, the entry by the assailant in the Rife home was a separate act which was an important and required part only of the home invasion offense." 106 Ill. App. 3d 774, 778.

Thus, *Tate*, which post-dates *Bitner*, holds that convictions for both aggravated battery and home invasion can be proper even though the indictment charges the same physical harm to the victim as a basis for both crimes. Furthermore, although the indictment in the case at bar alleges that both aggravated battery and home invasion were based on the infliction of great bodily harm, there were other bases upon which the State could have alleged aggravated battery, such as a battery committed against a person over 60 years of age. (See Ill. Rev. Stat. 1981, ch. 38, par. 12—4(10).) We also note that there were multiple blows inflicted against each woman, each of which may constitute a separate crime of aggravated battery and a separate basis for home invasion. Therefore, under the circumstances in the case at bar, we conclude that defendant's convictions for home invasion and two counts of aggravated battery were proper.

Next, defendant argues the sentences imposed on him by the trial court cannot be upheld. Specifically, defendant contends that the simultaneous imposition of multiple extended terms on the aggravated battery convictions and the home invasion convictions was improper, that the consecutive sentences were also improper, and that the effective sentence of 120 years was excessive as a matter of law when compared to Gilcrest's sentence of 30 years. The State concedes that the extended-term sentence for aggravated battery must be vacated since an extended term was imposed on the home invasion conviction (see *People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569), and, therefore, we vacate the extended-term sentence for aggravated battery.

██ Finally, in reviewing the other sentences we note that the trial judge in imposing sentence on defendant, observed that defendant was convicted of "four class X crimes" in justifying his specific sentences. Under these circumstances and, considering that we have vacated one conviction for armed robbery, one conviction for home invasion, and vacated the extended-term sentence for aggravated battery, we believe that justice requires that we remand the case to the trial court for resentencing so that he may impose the appropriate sentence in the context of the present situation. See *People v. Walton* (1981), 94 Ill. App. 3d 903, 419 N.E.2d 495.

For these reasons, we affirm one conviction of armed robbery, one conviction of home invasion, and two convictions of aggravated battery. We vacate one conviction of armed robbery, one conviction of home invasion, the extended-term sentences for aggravated battery and remand the case for resentencing.

Affirmed in part, vacated in part, and remanded.

BUCKLEY, P.J., and CAMPBELL, J., concur.