THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANK ORTIZ, Defendant-Appellant.

First District (4th Division)   No. 85—3201

Opinion filed May 28, 1987.

Steven Clark and Jeffrey Walker, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Rimas F. Cernius, and Kathleen A. Bom, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a bench trial, defendant, Frank Ortiz, was convicted of armed robbery and sentenced to 12 years in prison. On appeal, he contends that: (1) he was not proved guilty beyond a reasonable doubt because the State failed to establish the elements of armed robbery; (2) he was not proved guilty of armed robbery beyond a reasonable doubt because the trial court acquitted him of burglary with the intent to commit armed robbery on his motion for directed finding but found him guilty of armed robbery at the end of the trial; (3) he was denied his right to effective assistance of counsel when the trial court failed to assign a bar association attorney to argue defendant's *pro se* motion for replacement of his public defender with new counsel; and (4) his sentence for armed robbery should be vacated and remanded for resentencing because the trial court considered the evidence of other alleged crimes.

We affirm.

BACKGROUND

Ortiz was charged with attempted murder, residential burglary, armed robbery, and two counts of armed violence.

At trial, Steve Lewis, the complaining witness, testified that the incident occurred on April 30, 1984. Lewis was at home with his mother between 10:30 and 11 a.m. when she received a telephone call. When she hung up, she told Lewis that his sister had gotten into a fight at school and that she had to go and pick her up. After his

mother left, Lewis lay down in his bedroom with his door partially open.

Within minutes, Lewis heard noises in the living room below and went to investigate. There he saw a person in the living room whom he identified at trial as Jose Moreno. Lewis also saw Ortiz in his mother's bedroom. Lewis and Moreno began to scuffle, punching each other. Ortiz then started running toward the back door and Lewis ran after him. Lewis testified that Ortiz, then approximately 10 feet away, pulled a gun, turned halfway around, and pointed the gun at him. Lewis heard a clicking sound and ducked behind a jukebox in the hallway. Ortiz and Moreno fled through the back door.

Lewis telephoned the police, who searched the apartment upon their arrival. In addition to finding some objects that did not belong to the victim's family, the search revealed that jewelry belonging to Lewis' mother had been moved or dropped on the back porch. Lewis testified that before the incident, the earrings had been in his mother's jewelry box.

Approximately one week later, Lewis identified Ortiz and Moreno in a lineup. Subsequently, he identified them at trial.

Ortiz was questioned about his participation in the incident after his arrest in connection with an unrelated matter. After indicating his understanding of his *Miranda* rights, Ortiz told Detectives Thomas and Graffeo that he and Moreno first discussed how they would enter the Lewis' apartment and steal stereo and video equipment. To effect their plan, Ortiz telephoned Lewis' mother to get her out of the house on the pretense that her daughter had been injured at school. Ortiz told the detectives of Moreno's whereabouts and they picked him up to be interviewed.

After questioning Moreno, the detectives again interrogated Ortiz. Ortiz basically repeated his earlier account of what had happened, but claimed that Moreno was the one who pulled the gun on Lewis. Moreno told the detectives that Ortiz had the gun.

Next, an assistant State's Attorney interviewed Ortiz, after giving him the *Miranda* warnings. Ortiz told the State's Attorney that he had stayed home from school on April 30, 1984. A friend of his from the Latin Kings, Jose Moreno, came over to his house and the two of them discussed a plan to commit a burglary. They had first discussed such a plan the previous week. Ortiz decided he definitely wanted to be a part of the plan. He telephoned Mrs. Lewis and told her that her daughter had been hurt at school and taken to the hospital.

After talking to Mrs. Lewis, Ortiz and Moreno went to her home and entered the third-floor apartment through the unlocked back door.

Ortiz began to collect video equipment and Moreno took a jewelry box. While they were doing this a white male approached from the back of the apartment. According to the State's Attorney, Ortiz told him that Moreno drew his gun and pointed it at Lewis, after which Ortiz and Moreno fled the apartment.

After Ortiz had told the State's Attorney of these events he was asked to sign a handwritten summary prepared by the State's Attorney based on the interview. Ortiz read the statement and made one minor correction that he initialed, but he refused to sign it.

The trial court received all exhibits into evidence and the State rested. Defense counsel moved for a directed finding of acquittal on each count. The court dismissed the charges of residential burglary and armed violence at that point.

Following closing arguments the trial court found Ortiz guilty of armed robbery. At the sentencing hearing testimony was heard in aggravation concerning another burglary in which Ortiz was implicated. Defense counsel argued in mitigation. Ortiz was then sentenced to 12 years in prison.

OPINION

I

Armed robbery is defined by statute as a robbery committed while one "carries on or about his or her person, or is otherwise armed with a dangerous weapon." (Ill. Rev. Stat. 1985, ch. 38, par. 18—2.) Robbery is the taking of "property from the person or presence of another by the use of force or by threatening the imminent use of force." Ill. Rev. Stat. 1985, ch. 38, par. 18—1.

Ortiz initially contends that he was not proved guilty beyond a reasonable doubt because the State failed to establish all of the elements of armed robbery, particularly the "taking" requirement. In support of his argument Ortiz cites *People v. Triplett* (1985), 138 Ill. App. 3d 1070, 487 N.E.2d 39, a case in which the court found no taking of property to have occurred as to one of the two victims. In *Triplett*, however, both victims testified that a jewelry box was taken from one victim but that nothing was taken from the other.

In the pending case Lewis testified that the earrings that he found on the back porch after Ortiz and Moreno fled had been in his mother's jewelry box before the incident. Ortiz also told the State's Attorney in his oral statement that Moreno had taken a jewelry box. Unlike the circumstances in *Triplett*, here there was in fact evidence of a sufficient taking from the victim.

■ The Illinois Supreme Court has held that a robbery is complete when property is moved from its customary location with the intent to deprive the owner of the property, even though escape with the property is thwarted. (*People v. Baker* (1936), 365 Ill. 328, 6 N.E.2d 665. Accord, *People v. Ditto* (1981), 98 Ill. App. 3d 36, 424 N.E.2d 3.) Moreover, it is immaterial which defendant actually picked up and took the jewelry since both were working together as a team. (See *People v. Gant* (1974), 18 Ill. App. 3d 61, 309 N.E.2d 265.) Therefore, we find that the taking of the earrings is amply supported by the evidence.

■ The second element of armed robbery is that of force; " 'the degree of force necessary to constitute robbery must be such that the power of the owner to retain his property is overcome, either by actual violence physically applied, or by putting him in such fear as to overpower his will.' " (*People v. Patton* (1978), 60 Ill. App. 3d 456, 459, 376 N.E.2d 1099, 1101, quoting *People v. Williams* (1961), 23 Ill. 2d 295, 301, 178 N.E.2d 372, 375.) In *People v. Ditto* (1981), 98 Ill. App. 3d 36, 424 N.E.2d 3, the court noted that even if the initial taking is accomplished without force, the offense is robbery if the departure is accompanied by force.

The record reveals that force was indeed used against Lewis as soon as he discovered the perpetrators. Moreno fought with him and Ortiz pulled a gun and pointed it at him as the two men made their escape. Lewis testified that he jumped behind a jukebox when he heard a click from the gun. Under these circumstances Lewis' power to prevent the taking was overcome and force was necessary to complete the robbery and escape.

Ortiz contends, however, that the force used must take place before or contemporaneously with the taking of the property, relying on *People v. Simmons* (1975), 34 Ill. App. 3d 970, 342 N.E.2d 322. In *Simmons* the defendant asked the complaining witness if he could see some of his records after a dance that both attended. After he received them, defendant refused to return them and told the victim he would have to go across the street if he wanted the records back. The defendant then pulled the victim into the street, took out a gun and threatened to shoot him if he ran. He hit the victim in the head with the gun. In ruling that the force element was missing from the robbery charge, the court held that the force used was to commit an aggravated battery, not to effect a robbery or escape from the victim.

The pending case is more analogous to *People v. Kennedy* (1973), 10 Ill. App. 3d 519, 294 N.E.2d 788, a case in which defendant took coins out of an unlocked safe in a gas station. When the attendant saw him kneeling by the safe and also noticed that the coins were missing,

he followed the defendant into the garage and demanded their return. The defendant hit the attendant with a glass bottle, knocking him down, and thereby enabling the defendant to escape. The robbery conviction was upheld and the court noted that force was used to complete the crime and to permit defendant's escape.

In *People v. Heller* (1971), 131 Ill. App. 2d 799, 803, 267 N.E.2d 685, 689, the court upheld a robbery conviction in which the force used was to effectuate the defendant's departure, stating, "We feel that the use of a dangerous weapon at any point of a robbery, so long as it can reasonably be said to be a part of a single occurrence or incident *** will constitute armed robbery." We agree with this reasoning and find that Ortiz' and Moreno's force against Lewis was employed to complete the robbery and to make good their escape.

The third and final element Ortiz challenges in connection with the reasonable doubt issue is whether the offense occurred in the "presence" of the victim. Ortiz cites one case, *People v. Carpenter* (1981), 95 Ill. App. 3d 722, 726, 420 N.E.2d 640, 644, for the proposition that the test for this element is "whether the victim's proximity or control over the property was so close that he could have prevented the taking if he had not been subjected to force or the threat of force by the robber." Ortiz argues that Lewis was in no position to prevent the taking because it had occurred before any force was used, Lewis was unaware that property had been removed until after Ortiz and Moreno had left, and that the failure of Lewis' mother to testify deprived the court of evidence as to who actually had control over the property.

■■ Ortiz' position is incorrect. Proof of actual ownership is not necessary where care, custody, or control by the victim is shown. (*People v. Kelly* (1975), 25 Ill. App. 3d 753, 324 N.E.2d 82.) The record indicates that Steve Lewis was home alone at the time of the robbery and that the property was under his care and control. Moreover, the statutory requirement that there be a taking "from the person or presence" of the victim is not limited to the immediate presence of the owner or custodian. *People v. Smith* (1980), 78 Ill. 2d 298, 399 N.E.2d 1289.

In *People v. Carpenter* (1981), 95 Ill. App. 3d 722, 420 N.E.2d 640, defendants entered a hardware store and encountered two employees. One employee ran out the door and the other locked himself in a bathroom, after which the defendants took various items. The court held that the property was taken from the presence of the employee in the bathroom even though he was in another room and did not see defendants take anything.

■■ We conclude after examining the evidence adduced at trial

that the State sustained its burden of proving Ortiz guilty beyond a reasonable doubt of armed robbery.

## II

Next, Ortiz contends that the trial court rendered legally inconsistent findings by directing a finding in his favor on the charge of burglary with intent to commit armed robbery but convicting him of armed robbery at the end of the trial. According to Ortiz, the trial court should be collaterally estopped from finding at the end of trial that he had the requisite intent to commit armed robbery after initially finding that Ortiz had *no* intent to commit armed robbery at the directed finding stage of the proceedings.

Ortiz misapprehends the legal issue involved. Inconsistent verdicts occur when a verdict on one count is premised on the existence of an element of the offense and a verdict on another count is premised on the nonexistence of the same element. (*People v. Rogers* (1982), 104 Ill. App. 3d 326, 432 N.E.2d 975.) In *People v. Frias* (1983), 99 Ill. 2d 193, 457 N.E.2d 1233, the Illinois Supreme Court held that an armed violence conviction was legally inconsistent with an acquittal of murder because the armed violence offense was predicated on murder as the underlying felony. If the elements of murder were not established, the court reasoned, the armed violence offense could not be sustained because the statutory definition of armed violence requires the establishment of the underlying felony.

In the pending case, the trial court granted the defense motion for directed finding on the residential burglary count. This offense requires a showing that the defendant unlawfully entered the dwelling of another with the intent to commit a felony or theft therein. (Ill. Rev. Stat. 1985, ch. 38, par. 19—3.) In this case, the underlying felony was armed robbery and Ortiz asserts that the dismissal of the burglary count necessarily requires a finding that he did not have the intent to commit armed robbery. He cites *People v. Toolate* (1984), 101 Ill. 2d 301, 461 N.E.2d 987, in support of his position.

In *People v. Toolate* the court reversed a burglary conviction which was based on the defendant's entry into the victim's home late at night, ostensibly with the intent to commit rape. The court found, however, that there was no evidence that defendant ever touched or threatened the victim, who awakened in her bedroom and saw defendant. When she ordered him to leave, he did so. Finding no acts sufficient to establish an attempted rape or an intent to commit another felony or theft, the court concluded that the burglary charge could not be sustained.

In contrast, the dismissal of the burglary count in the instant case merely indicated that the court found insufficient evidence to infer that Ortiz had the specific intent to commit armed robbery *at the time he unlawfully entered the victim's home*. In fact, the record shows that Ortiz and Moreno intended that no one would be at home and designed their telephone ruse to cause Mrs. Lewis to leave. Hence, their intent upon entering the apartment was not to commit armed robbery. Moreover, since robbery is not a specific intent crime (*People v. Banks* (1979), 75 Ill. 2d 383, 388 N.E.2d 1244), the court was in no way precluded from finding that, once Ortiz and Moreno were discovered by Steve Lewis, they used their gun and such force as they deemed necessary to complete the robbery and escape.

■ We conclude that since the requisite intent elements of residential burglary and armed robbery are distinct, the finding of acquittal of the former is not inconsistent with the finding of guilty of the latter.

## III

■ Ortiz' third point of error concerns what he characterizes as a denial of his sixth amendment right to effective assistance of counsel. During the trial, after several days of testimony, Ortiz made a *pro se* motion seeking a new lawyer. The basis of his motion was that the public defender was "not helping" him with his case. The trial court denied the motion. Ortiz now claims that the trial court erred in not appointing new counsel to argue the motion on Ortiz' behalf.

Initially, we note that Ortiz failed to raise this issue in his post-trial motion for a new trial; it is accordingly considered waived on appeal. (*People v. McGrew* (1984), 128 Ill. App. 3d 464, 469, 470 N.E.2d 1157, 1161.) Nevertheless, we do not find that the trial court abused its discretion in denying the motion itself, since no reasonable basis for a change of counsel was delineated (*People v. Guyon* (1981), 101 Ill. App. 3d 799, 428 N.E.2d 998), the motion was made mid-trial, and the trial had been delayed several times. See *People v. Jackson* (1981), 100 Ill. App. 3d 318, 426 N.E.2d 1132 (to permit defendants in every case to change counsel without good cause would result in judicial chaos).

Ortiz does not directly challenge the trial court's discretion in denying the motion; however, he focuses on the supposed right of the defendant to obtain different counsel to actually argue the motion seeking new counsel, the reasoning being that there would be a conflict of interest to have the public defender argue a motion based on his own incompetence. Ortiz' citation of *People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E.2d 1045, and *People v. Simpson* (1984), 129 Ill.

App. 3d 822, 473 N.E.2d 350, is unpersuasive, however, because those cases involved motions for new trials based on ineffective assistance of counsel after the conclusion of the trial. In such situations the appointment of different counsel to argue the post-trial motion would not cause delay of the trial or otherwise interrupt proceedings after they had begun. Moreover, the facts of both *Krankel* and *Simpson* reveal that the grounds alleging ineffective assistance were substantial and concrete and included the failure of counsel in both cases to call alibi witnesses. Accordingly, those cases held that new counsel should be allowed to present the post-trial motions, for a fair and full hearing.

Our review of the record indicates that Ortiz' statement that his lawyer was not helping him is vague, conclusory, and contradicted by the court's finding that the attorney's representation was sufficient. Accordingly, he fails to show good cause why he should have had new counsel appointed in the middle of trial. He also fails to persuade us that he should have been allowed to have different counsel appointed to argue his *pro se* motion for new counsel.

IV

■ Finally, Ortiz urges us to vacate his 12-year sentence and remand for resentencing on the ground that the trial judge considered purportedly unreliable evidence of another burglary that he allegedly committed. Although he concedes that the trial court was not bound by the ordinary rules of evidence in determining the admissibility of evidence at the sentencing hearing (*People v. Adkins* (1968), 41 Ill. 2d 297, 242 N.E.2d 258), he maintains that in his case the evidence of criminal conduct was unreliable and therefore tainted his sentencing.

The record reveals that the State presented two witnesses to testify concerning a burglary at a residence on May 1, 1984, the day following the occurrence in the pending case. The State's Attorney who interviewed the victims of that burglary testified as to what items were stolen. An officer who had responded to a call of burglary in progress testified that two officers he spoke to had seen three individuals leaving the rear of the premises. The officers found these men hiding under a porch, along with a bicycle taken in the burglary. The officer who testified at Ortiz' sentencing hearing identified one of the three offenders as "the gentleman with the curly hair in the middle," presumably indicating Ortiz. The officer also testified that he recovered several of the stolen items from the offenders, including a name plate containing the victim's name and a photograph of her children. Finally, there was evidence presented that Ortiz had been in illegal possession of a fully loaded .357 Magnum pistol at the time of his arrest.

██ A key safeguard for a defendant when evidence of other crimes is presented in his sentencing hearing is his opportunity to cross-examine and confront witnesses. (See *People v. Garza* (1984), 125 Ill. App. 3d 182, 465 N.E.2d 595.) As long as the trial judge exercises due care to insure that the information is relevant and accurate, evidence of criminal conduct is admissible at a sentencing hearing. *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.

We find unpersuasive Ortiz' claim that the above-described evidence was unreliable and insufficient to support his sentence. The authorities he relies on are distinguishable in that the defendants in those cases were not given an adequate opportunity to confront and cross-examine the witnesses having knowledge of their criminal conduct. For example, in *People v. Kirk* (1978), 62 Ill. App. 3d 49, 378 N.E.2d 795, the court considered only a psychiatrist's report containing information of the defendant's alleged other crimes without hearing testimony from the psychiatrist or from the individuals reporting such conduct to the police. In *People v. Turner* (1979), 78 Ill. App. 3d 82, 396 N.E.2d 1139, evidence of two burglaries and a kidnaping were introduced over the defendant's strong objections. The appellate court determined that the evidence was improperly considered because defendant was not permitted a full presentation of facts or a free cross-examination in that he was actively contesting the very admission of the evidence during the jury trial. In addition, he was not informed in advance that the evidence would be considered in aggravation.

██ In the instant case defense counsel did not object to the introduction of the evidence concerning the second burglary. It was not admitted at the trial itself but only in aggravation and was subject to Ortiz' cross-examination. The testimony of the officer who identified Ortiz as one of the three offenders was direct and relevant to the sentencing matters, particularly since he apprehended the offenders with the stolen goods still in their possession. We do not find that the trial court abused its discretion or considered improper testimony.

For the foregoing reasons, we affirm the trial court's rulings in all respects.

Affirmed.

McMORROW, P.J., and JOHNSON, J., concur.