THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARK DONNELLY, Defendant-Appellant.

Fourth District   No. 4—91—0397

Opinion filed March 19, 1992.

STEIGMANN, J., specially concurring in part and dissenting in part.

Daniel D. Yuhas and John Anthony Palombi, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Following a jury trial in the circuit court of McLean County, defendant Mark Donnelly was convicted of home invasion (Ill. Rev. Stat. 1989, ch. 38, par. 12—11(a)(2)) and sentenced to 10 years' imprisonment. He now appeals his conviction, claiming (1) the State did not prove him guilty beyond a reasonable doubt of entering the victim's home without authority and, therefore, he could not be convicted of home invasion; (2) he was denied his sixth amendment right to effective assistance of counsel because his trial counsel failed to tender an instruction for the lesser offenses of battery or aggravated battery; and (3) he is entitled to 84 days' credit against his prison sentence for time spent in jail, rather than 81 days' credit as granted by the trial court.

Evidence at trial showed that at approximately 2:30 a.m. on August 20, 1990, the victim Alonzo Lemons and his girlfriend Lisa Gaddis were sitting in the living room of their residence watching television. Their child was asleep in one of the bedrooms. The screen door leading into the living room was closed, but the main door was open. It would have been apparent to someone standing at the door that the home was occupied. Gaddis testified she saw defendant and two com-

panions standing at the door. Defendant entered the home, followed by the others, without knocking or seeking permission to enter. She told Lemons (who was dozing) that they had company. Defendant then walked up to Lemons and began striking him. Gaddis' child began to cry and she went into the bedroom, followed by one of defendant's companions. Lemons called to her to telephone the police. When she attempted to do so, one of the men kicked in the bedroom door and tore the phone off the wall. After the men left, she observed that the living room was in disarray, with papers scattered around and vases broken. Lemons' bedroom door had also been damaged and a mirror in the bedroom broken. Lemons himself had a broken nose, his face was bruised and cut, and one of his eyes was swollen nearly shut.

Lemons' testimony regarding the incident was similar to that of Gaddis. He testified the screen door was closed and the main door was open. He said some friends of his had just left the house. Defendant simply walked into the house without an invitation and without knocking. Upon entering, defendant began hitting him. Defendant wanted some papers that Lemons had. When Lemons went into his bedroom to get the papers, defendant and one of the other men followed and continued to hit him. Defendant found the papers he wanted, and he and the others then left. The papers were letters Lemons had received from Lillian Donnelly, the widow of defendant's brother John. John Donnelly had been killed, and Lillian was either a suspect or was charged with the killing. Lemons had had an affair with Lillian while she was married to John, and Lemons had revealed this fact to defendant. About a week prior to the incident, Lemons had told defendant that he had some letters Lillian had written to him (Lemons) that the prosecutor might find useful. Defendant asked Lemons to take these letters to the prosecutor himself. At the time of the attack, Lemons had not done so. There had been some tension between defendant and Lemons over the letters prior to the attack. Lemons testified that when he saw defendant that night, he had a feeling he knew why defendant was there.

Much of the testimony centered on the question of whether defendant had authority to simply walk into Lemons' house without knocking and waiting for an invitation. Lisa Gaddis testified that one or two people had license to walk in without knocking, and she mentioned a specific friend of Lemons, Derrick Rice, who she said had such authority. She also testified that she was not alarmed when defendant walked into the house. Lemons testified he was friendly with defendant, and that defendant had been at his house on prior occasions. Both he and Gaddis indicated defendant had not been there

for at least a month prior to the incident. Lemons testified defendant did not have authority to walk into his home without knocking first, and that he had not done so on prior occasions unless Lemons knew he was coming over. Defendant was not invited to his house the night of the incident. Lemons testified the only persons allowed to walk in without knocking were Derrick Rice and Lisa Gaddis.

Defendant did not testify, but a statement he gave to law enforcement authorities after his arrest was admitted into evidence. When asked why he and his companions had gone to Lemons' house that night, defendant responded they had gone there just to talk to Lemons, to see whether he had gone to the police station to tell them what he knew about Lillian Donnelly. The statement included the following questions and answers as to the issue of consent for defendant to enter the Lemons home:

"[By detective]: When you arrived at the house, did you knock on the door?

[By defendant]: I tapped on the door.

[Detective]: When you tapped on the door, what happened?

[Defendant]: He looked at us as a look as to why did we tap.

[Detective]: Did he tell you to come in?

[Defendant]: Not verbally.

[Detective]: Did he tell you non-verbally to come in?

[Defendant]: I guess yeah.

[Detective]: How did he do that?

[Defendant]: It was more or less like a look as to why are you standing out there[.]

[Detective]: So what you are saying is that he never asked you verbally or non-verbally to come inside of the house, is that correct?

[Defendant]: It was[ ] more like a past agreement where I didn[']t have to knock."

Defendant's aunt and mother testified that, in a conversation they had with Lemons after the incident, he told them he had invited defendant and his companions to his home that night. Lemons denied making this statement. Defendant's mother also testified she had taken her son to Lemons' house at least three times in the last year and had watched him walk in the door without knocking or ringing a doorbell. Lemons testified in response to this that if there were occasions when defendant would enter his house without knocking, it was because Lemons knew he was coming over, saw him at the door, and signaled him to enter.

■ We first address defendant's contention that the State did not establish beyond a reasonable doubt that he entered Lemons' house without authority and, therefore, he could not be convicted of home invasion. He further argues, should this court find he did have consent or authority from Lemons to enter his home in the manner he did, that we should not follow the "limited authority" doctrine espoused by some of our sister districts. This doctrine holds that even if a defendant has consent to enter, the consent is limited to the purpose for which defendant is granted entry. Exceeding the scope of that authority by threatening or injuring an occupant may render the perpetrator guilty of home invasion. See *People v. Hudson* (1983), 113 Ill. App. 3d 1041, 1044-45, 448 N.E.2d 178, 181; *People v. Racanelli* (1985), 132 Ill. App. 3d 124, 134-35, 476 N.E.2d 1179, 1186.

In order to prove defendant guilty of home invasion, one element the State had to prove beyond a reasonable doubt was that he entered Lemons' residence without authority. Defendant believes the evidence demonstrated he had authority to enter the house. He points to testimony of Lisa Gaddis and Lemons that certain people customarily entered the house without knocking. He also admits, however, that both Gaddis and Lemons testified he was not invited into the house that night. Also, he refers to testimony of his mother and aunt that Lemons told them he had invited defendant to his house that night; he points out the denial by Lemons that he made this statement. In short, defendant sets out various conflicts in the testimony concerning what authority he had, if any, to simply walk into Lemons' house. However, therein lies the problem. It is not the job of a reviewing court to weigh the evidence and reach a verdict; this is the exclusive province of the jury. Where sufficiency of the evidence is challenged, the task of a reviewing court is to decide whether, taking all evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt. (*Jackson v. Virginia* (1979), 443 U. S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.) Resolution of factual disputes and assessment of credibility of witnesses is for the jury to decide. A reviewing court may not reverse a conviction, unless the evidence is so unsatisfactory or improbable that a reasonable doubt remains as to defendant's guilt. *People v. Yates* (1983), 98 Ill. 2d 502, 518-19, 456 N.E.2d 1369, 1377-78; *People v. Williams* (1982), 93 Ill. 2d 309, 315, 444 N.E.2d 136, 138; *People v. Watson* (1982), 103 Ill. App. 3d 992, 995, 431 N.E.2d 1350, 1353.

■ Viewing it in a light most favorable to the State, we cannot say that, after considering all the evidence, we have any reasonable doubt as to the State's proof on this element of the offense. Therefore, we find there was sufficient evidence for the jury to find defendant guilty of home invasion.

Having decided the jury could have found beyond a reasonable doubt that defendant had no authority from Lemons to simply walk into his home, we need not reach defendant's further argument urging us not to follow the "limited authority" doctrine regarding consent to enter an occupied residence.

We turn now to defendant's second claim of error, in which he argues he was denied effective assistance of counsel because his attorney failed to tender a jury instruction on the lesser offenses of battery or aggravated battery. He maintains he was prejudiced by this failure because of the closeness of the evidence. The State disputes this claim, saying that battery and aggravated battery are not included offenses of the crime of home invasion and, therefore, defense counsel was not ineffective in not tendering such instructions. Alternatively, the State argues that even if defense counsel erred in not tendering such instructions, defendant was not prejudiced because the evidence clearly showed he was guilty of home invasion and it is unlikely the jury would have acquitted him of that crime and found him guilty of only aggravated battery.

Defendant claims an accused is entitled to a jury instruction on a lesser offense when the charge sets out the main outline of that lesser offense. In this case, defendant points out the information charging him with home invasion also included an allegation that he intentionally inflicted injuries on Lemons. He also points out that the charge, as well as the evidence at the trial, would have supported jury instructions on battery or aggravated battery.

■ Where an accused is charged with a single offense, he cannot be convicted of an uncharged offense, unless that offense is an included offense of the one charged. (*People v. Lewis* (1980), 83 Ill. 2d 296, 415 N.E.2d 319; *People v. Schmidt* (1988), 126 Ill. 2d 179, 533 N.E.2d 898.) An included offense is one established by proof of the same or less than all of the facts, or a less culpable mental state, or both, than that which is necessary to establish commission of the charged offense. (Ill. Rev. Stat. 1989, ch. 38, par. 2—9.) In order for an offense to be an included offense, it must not have any elements that are not also present in the greater offense, so that it is impossible to commit the greater offense without also committing the in-

cluded offense. *People v. Williams* (1989), 191 Ill. App. 3d 269, 547 N.E.2d 608.

This court held in *People v. Tate* (1982), 106 Ill. App. 3d 774, 436 N.E.2d 272, that aggravated battery is not an included offense of home invasion. It was observed that the aggravated battery statute involves the element of "great bodily harm" (Ill. Rev. Stat. 1989, ch. 38, par. 12—4), whereas the home invasion statute requires only an infliction of *any* injury. In addition, entry of a residence is an element of home invasion, while such entry is not an element of aggravated battery. (*Tate*, 106 Ill. App. 3d at 778, 436 N.E.2d at 275; see also *People v. Triplett* (1985), 138 Ill. App. 3d 1070, 487 N.E.2d 39 (first district citing *Tate* with approval).) Applying the rationale of *Tate* to this issue, we find that battery is not an included offense of home invasion. As *Tate* has pointed out, the element of entry into a dwelling, which is required for a home-invasion conviction, is not an element of battery.

However, even were we to find that battery is an included offense of home invasion, we could not conclude that defendant was prejudiced by his counsel's failure to tender such instructions. In order to sustain a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient, and that this deficient performance prejudiced the defense. (*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.) A defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the proceeding. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

In the instant case, the evidence was not particularly close on the question of whether defendant had authority or consent from Lemons to enter his home. Lemons testified defendant did not have permission to simply walk into his house. Lemons' girlfriend also testified defendant was not invited into the house, and that he did not have a standing invitation to walk into the house at any time. The only real conflict in testimony came from defendant's aunt and mother, who both testified Lemons told them after the incident that he had invited defendant to the house that night. Lemons denied this. The jury could have considered the testimony of defendant's aunt and mother to be suspect, given their relationship to defendant. We also note that defendant's own statement to the police, which was introduced into evidence, did not indicate he had been invited to Lemons' house. This further puts the testimony of his aunt and mother in doubt. The jury

could easily have found from all the evidence presented that defendant had no authority to enter Lemons' house and that he was, in fact, guilty of home invasion. We believe it unlikely that the jury would have acquitted defendant of home invasion and found him guilty of battery, even if an instruction on battery had been given.

We turn to defendant's final assignment of error, which relates to the number of days of credit which should be given against his sentence "for time spent in custody as a result of the offense for which the sentence was imposed," under section 5—8—7(b) of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—7(b)). The sentencing order of the trial court in the present case fixed 81 days of credit for time served. Defendant claims 84 days would be the correct number, and the State contends 83 days would be the correct number.

Alleged error of this type is commonly presented in criminal appeals before this court. Most often the alleged errors have not been brought to the trial court's attention prior to the appeal. Because of this continuing problem, we deem it necessary to suggest certain procedures to the various trial courts of this district.

In the present case, the presentence report indicated: "Jail Time 8/22/90 to 9/18/90 and 2/7/91 to present." The sentence was entered on April 2, 1991. The defendant is entitled to credit under the authority of section 5—8—7(b) of the Code for any part of any day he is in custody. *People v. Compton* (1990), 193 Ill. App. 3d 896, 904, 550 N.E.2d 640, 645.

### CALCULATION OF DEFENDANT'S DAYS OF CREDIT

| | |
|---|---|
| August 1990 (subtract 21 from 31—21 must be used so credit for August 22 is given): | = 10 days |
| September 1990: | = 18 days |
| February 1991 (subtract 6 from 28): | = 22 days |
| March 1991: | = 31 days |
| April 1991: | = 2 days |
| Total days of credit earned as of day of sentencing: | = 83 days |

Additional time will be added for days defendant is held in the county jail after sentencing and before transfer to the Department of Corrections (DOC). The DOC has sufficient information as to additional time served after sentencing and prior to transfer to the peni-

tentiary, and it makes the appropriate additional credit applicable to defendant's sentence.

■■ Section 5—8—7(b) of the Code is absolute, and there is no room for discretion. Credit must be given, and computation of the credit is basically an administrative function, but sentencing itself is a judicial function. The credit time is usually shown in the "Judgment and Sentence," and is part of the "Mittimus for State Penal Institutions." This document is often dated, as in the present case, some days after the sentencing hearing and may not be seen by the defendant. It is, however, a part of the record on appeal.

Because of the statutory right to the credit, we hold that the error in computing the credit is not waived by failure of the defendant in this case to call the error to the trial court's attention. However, proper trial-court practice at the time of sentencing would include taking a few additional minutes to discuss credit-time computation with the prosecutor, defense counsel, and defendant—and then fix the number of days. From our experience, that effort might well avoid the loss of labor necessitated in the appellate process and the remandment process.

Defendant's conviction is affirmed. The cause is remanded to the circuit court for amendment of the order of judgment and sentence to grant defendant credit for 83 days against his sentence for time served, including the date of sentencing.

Affirmed and cause remanded with directions.

McCULLOUGH, J., concurs.

JUSTICE STEIGMANN, specially concurring in part and dissenting in part:

I agree that defendant's conviction should be affirmed, but because I do not agree that the cause should be remanded for amendment of the sentencing order, I respectfully dissent from that portion of the opinion.

Although I agree with the suggestions and much of the analysis contained in the majority opinion, I do not believe that opinion goes far enough in clarifying what procedures the trial courts should employ when determining a defendant's credit for time served.

Section 5—8—7(b) of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—7(b)) provides that a defendant "shall be given credit on [his] *** sentence *** for time spent in custody as a result of the offense for which the sentence [to prison] was imposed." That section does

not specifically provide that the trial judge shall determine how much credit is to be given a defendant, but any contrary reading of the statute makes no sense. After all, sentencing is a *judicial function*, and just as trial judges determine the sentence to impose, they are responsible for determining how much credit a defendant is due under section 5—8—7(b) of the Code for time served.

I disagree with the statement in the majority opinion that "computation of the credit [for time served] is basically an administrative function, but sentencing itself is a judicial function." (226 Ill. App. 3d at 779.) I fear that ambiguous statement may be viewed by some trial judges as an invitation to delegate their responsibilities. In my opinion, this judicial function is *not* delegable to personnel from the sheriff's office, the circuit clerk's office, the State's Attorney's office, the public defender's office, or anywhere else. Instead, the trial judge retains the responsibility to ensure that the sentenced defendant receive all of the statutorily mandated credit for time served to which he is entitled. Given the frequency with which the parties dispute, or are uncertain about, how much credit a defendant is due, the trial judge should resolve this issue at the time of the sentencing hearing after the judge has given the parties an opportunity to address it on the record.

In order to perform its judicial function of determining how much credit for time served a defendant is due, the trial court should direct the probation office to include within its presentence report *both* a listing of all of the days defendant was in custody on the charge for which he is to be sentenced *and* the total of days for which defendant is entitled to credit. By adding together the days of the defendant's custody and providing this figure in the presentence report, the probation office relieves the court and counsel of the need to do so themselves. In obtaining this information regarding the number of days defendant was in custody, the probation office should consult the sheriff's department and State's Attorney, as well as defendant and his counsel, in order to ensure the accuracy of the information it provides to the court.

In *People v. Powell* (1990), 199 Ill. App. 3d 291, 294-95, 556 N.E.2d 896, 898, this court wrote the following regarding information presented in the presentence report at the sentencing hearing and the duty of defendants with regard thereto:

"Given the quoted statutory provisions regarding presentence reports and sentencing hearings, we hold that *all* information appearing in a presentence report may be relied upon by the sentencing judge to the extent the judge finds the information

probative and reliable. In so holding, we are not requiring the judge to specify for the record those portions of the presentence report upon which the judge is relying.

To the extent that either the defendant or the State may believe that the presentence report contains inaccuracies, we hold that they have the burden to call any such inaccuracy to the court's attention at the start of the sentencing hearing. The better practice would be for the court, at the start of the sentencing hearing, to inquire of all counsel whether they have received the presentence report and whether they found any inaccuracies therein. However, irrespective of whether this practice is followed, we hold that the failure to object to any alleged inaccuracies in the presentence report waives that claim on appeal." (Emphasis in original.)

I see no reason why information contained in the presentence report regarding how much credit defendant is due under section 5—8—7(b) of the Code should be treated differently than any other information contained in that report. Accordingly, this court should hold that a defendant's failure at the sentencing hearing to contest the information contained in the presentence report regarding how much credit he is due for time served (which figure the court ultimately accepts) waives any claim as to insufficient credit for purposes of appeal. In support of this position, I note that section 5—3—4(b)(2) of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 1005—3—4(b)(2)) requires that the presentence report be provided to the prosecutor and defense counsel *at least* three days prior to the sentencing hearing. That statutory mandate ensures that the parties will have sufficient time to investigate (to the extent that they wish) the calculations in the presentence report regarding how much credit the defendant is due for time served.

On the other hand, if trial courts fail to follow these guidelines, causing the question of defendant's credit for time served not to be fully addressed at the sentencing hearing, or causing uncertainty in the record as to whether the trial judge or some other official ultimately resolved that issue, this court should hold that defendant has not waived the issue on appeal. In appropriate cases, we should reverse and remand on that issue when our calculations from the record on how much credit defendant is due differ from the credit defendant seems to have been given at the trial level.

In the present case, the presentence report listed the days defendant was in custody but did not total them. The trial court must have done so, however, because it gave defendant credit for 81 days spent

in custody. On appeal, defendant claims he is entitled to 84 days of credit. The State concedes defendant is entitled to additional credit, but disputes the amount, claiming he is entitled instead only to 83 days of credit. The majority agrees with the State and remands with directions that the sentencing order be amended to give defendant credit for 83 days served, instead of the 81 days presently shown on the sentencing order. I disagree with that remand.

Although the better practice for the trial court in the present case would have been to direct the probation office, when preparing the presentence report, to total the number of days of credit defendant was due, the presentence report nonetheless set forth the days defendant was in custody. At no time during defendant's sentencing hearing did he raise the issue of credit for time served. He elects to do so for the first time on appeal, and the majority opinion does not explain why we should let him. The only comment by the majority on this point is the following: "Because of the statutory right to the credit, we hold that the error in computing the credit is not waived by failure of the defendant in this case to call the error to the trial court's attention." 226 Ill. App. 3d at 779.

The majority's analysis does nothing to distinguish this defendant's claim on appeal for the proper amount of credit for time served from some other defendant's claim on appeal that his restitution order was not calculated in compliance with the applicable statutory provisions. (See Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—6.) Yet the latter was precisely the argument that this court rejected in *Powell*. There we held that the defendant waived the issue of whether the presentence report contained inaccuracies regarding the restitution he should pay because he failed to raise that issue at the trial level. See *Powell*, 199 Ill. App. 3d at 294-95, 556 N.E.2d at 898.

The sound use of our limited judicial resources requires that we impose a duty upon litigants to make their grievances known to the trial court, instead of requesting relief for the first time on appeal. To hold otherwise squanders these precious resources. Accordingly, I respectfully dissent.