THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENNY W. GWARTNEY, Defendant-Appellant.

Fourth District    No. 4—96—0178

Opinion filed June 30, 1997.—Rehearing denied July 31, 1997.

Daniel D. Yuhas and John M. McCarthy, both of State Appellate Defender's Office, of Springfield, for appellant.

Brett Irving, State's Attorney, of Pittsfield (Norbert J. Goetten, Robert J. Biderman, and Perry Miller, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GARMAN delivered the opinion of the court:

Following a jury trial in the circuit court of Pike County, defendant Kenny W. Gwartney was found guilty of burglary (720 ILCS 5/19—1(a) (West 1994)), armed robbery (720 ILCS 5/18—2(a) (West 1994)), and armed violence (720 ILCS 5/33A—2 (West 1994)). Subsequently, the trial court sentenced him to 18 years' imprisonment on the armed violence conviction and granted him 139 days of credit for time spent in jail prior to sentencing. Defendant appeals, arguing (1) the trial court erred in instructing the jury on accountability and (2) he is entitled to 140 days of credit against his sentence. We affirm. .

On October 13, 1995, defendant and Robert Baughman were each charged by information with one count of burglary, one count of armed robbery, and one count of armed violence. A consolidated jury trial was held on January 11 and 12, 1996.

Debra Lippincott testified that she is the manager at Lindsay's Tavern in Pittsfield, Illinois. During the evening of October 9, 1995, she was tending bar. At about 12:15 a.m. on October 10, 1995, Lippincott had closed the tavern and was counting her receipts. She heard a noise in the back room and investigated it. When she opened the storeroom door, she was confronted by two men. One of the men wore a baseball cap and the other wore some other type of hat. Both men wore bandannas over their faces. One of the men pointed a shotgun or rifle at her and ordered her to lie down on the floor. The other man had a knife. They went behind the counter, took a green money bag, and left. The bag contained cash and checks from that evening's business. One of the men wore a flannel shirt and the other wore a light-colored sweater or jacket.

On cross-examination, Lippincott estimated that the robbery took approximately five minutes. The back door was not locked, but the screen door was latched. All of the other doors were locked. Lippincott knew almost everyone in the tavern that evening. It was not possible for someone to have gone into the storeroom while the tavern was open and remain there until after closing time; she had been in the storeroom throughout the evening and there was no one back there.

Jackie Taylor testified that she was working as a bartender at the Out of Bounds Tavern in Pittsfield on October 9, 1995. At approximately 11:38 p.m., when she was closing the tavern, two men approached her at the door. One man wore a black stocking cap and the other wore a baseball cap. Both men wore flannel shirts and blue jeans. She identified defendant as one of the men. He asked if he could come in, and Taylor told him the tavern was closed. The men walked away. Taylor gathered her belongings, locked up the tavern, and went out to her car. The men were standing in the alley watching her. When she got into the car and started it, the men had disappeared down the alley. She drove through the alley and saw the men standing near a Dumpster. She could not identify the other man.

Pike County sheriff's deputy John Pennock testified that he was on patrol during the early morning hours of October 10, 1995. At about 1:10 a.m., he stopped a vehicle traveling eastbound on Washington Street in Pittsfield for failing to dim its headlights. The stop was made seven blocks from Lindsay's Tavern. There were two men in the car. Pennock identified defendant as the driver and Baughman as the passenger. Defendant told Pennock he was driving his friend home; they had been out "messing around" that night. Defendant wore a baseball cap, a gray T-shirt, and blue jeans. The traffic stop took no more than two minutes.

Approximately 15 minutes later, Pennock was summoned to Mississippi Street by Deputy Paul Petty. A car was stopped in the road and a man was kicking the front tires. When Pennock arrived, he saw it was the same vehicle he had previously stopped. Both defendant and Baughman were there. Defendant explained he was checking his brakes. This stop occurred approximately four blocks from the previous traffic stop. Defendant had a nice demeanor and did not seem nervous during either traffic stop.

Neil Roberts testified that he was employed by Robert's Automotive and Machine in Mt. Sterling, Illinois. He had done some machinery work for Baughman during April 1995. Baughman did not come back in to pay for the work until October 10, 1995. The total bill was $148. Baughman paid in cash and received a receipt.

Deputy Chris Dolbeare testified that he participated in the robbery investigation. In an alley near Lindsay's Tavern, he recovered a 12-gauge sawed-off shotgun. The gun was loaded with two 12-gauge shells. Dolbeare also participated in a search of defendant's vehicle and recovered a knife, a 12-gauge shotgun shell, a plaid shirt, and a purple sweatshirt.

Master Sergeant Kenneth Yelliott of the Illinois State Police testified that on October 13, 1995, he and Trooper Bradley Lacy conducted a search of Baughman's residence. He recovered a coffee can containing water and pieces of charred paper. The charred pieces of paper were identified as checks that had been written to Lindsay's Tavern.

Trooper Lacy testified that he also participated in the search of Baughman's residence. He recovered a green money bag with the words "Lyndle Lindsay" written on it in large black print. He found the bag under a stack of hand towels in the cabinet beneath the bathroom sink. Lacy also recovered a shoe box that contained a stack of 42 $1 bills and a receipt from Robert's Automotive and Machine.

Pamela Baughman testified that she was married to Baughman for five years. In the early morning hours of October 10, 1995, she was awakened when Baughman came into their bedroom. She saw that he had money in his hand. She did not know how much money he had, but it was a large sum. During the search of the residence, she directed Yelliott and Lacy to the coffee can that contained the burned checks. The checks were not written from her account or Baughman's account. She first noticed the green money bag under the towels on the morning of the police search; she did not know where it came from.

The jury found both defendant and Baughman guilty on all three counts. At the sentencing hearing held on February 29, 1996, the

trial court sentenced defendant to 18 years' imprisonment on the armed violence count. The court also ordered that defendant receive 139 days of credit for time spent in jail prior to sentencing. Defendant filed a posttrial motion, which the trial court denied. This timely appeal followed.

Defendant first argues that the trial court erred in giving the jury an instruction on accountability. He contends the evidence showed that he was either guilty as a principal in the robbery or he played no part in the crimes whatsoever. The instruction, he claims, allowed the jury to find him guilty based upon evidence that Baughman participated in the robbery. We disagree.

■ It is well settled that an accountability instruction that is inappropriately given does not constitute reversible error where there is sufficient evidence from which the jury could have found the defendant guilty as a principal. *People v. Jefferson*, 227 Ill. App. 3d 491, 496, 592 N.E.2d 134, 138 (1992); *People v. Andrews*, 95 Ill. App. 3d 595, 598, 420 N.E.2d 509, 511 (1981). In this case, the State presented evidence showing that defendant and another man tried to enter the Out of Bounds Tavern at closing time on October 9, 1995, but were not allowed in. The men lingered in a nearby alley as the bartender left the tavern. Shortly thereafter, two men fitting a similar description robbed Lindsay's Tavern. They were armed with a shotgun and a knife; they took a green money bag filled with cash and checks. Approximately one hour later, defendant's vehicle was stopped by Pennock. Defendant told Pennock he and his passenger, Baughman, were out that night and he was driving Baughman home. A 12-gauge shotgun was later found in an alley near the crime scene. When defendant's vehicle was searched two days later, police found a knife, a 12-gauge shotgun shell, and a plaid shirt. When Baughman's residence was searched, police found charred checks written to Lindsay's Tavern and a green money bag imprinted with the words "Lyndle Lindsay." Clearly, there was sufficient evidence from which the jury could have found defendant guilty of the offenses as a principal. Thus, any error in giving the instruction would have been harmless.

■ Nevertheless, on the merits, we find no error on the part of the trial court. Both the State and the defendant are entitled to the submission of appropriate jury instructions on the law that applies to their theory of the case if there was evidence to support the theory. *People v. Gilliam*, 172 Ill. 2d 484, 519, 670 N.E.2d 606, 622 (1996). Moreover, very slight evidence upon a given theory of a case will justify the giving of an instruction. *People v. Jones*, 175 Ill. 2d 126, 132, 676 N.E.2d 646, 649 (1997).

Under Illinois law, a person is legally accountable for the conduct of another when:

> "Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5—2(c) (West 1994).

Here, evidence showed that defendant and Baughman were out driving together during the early morning of October 10, 1995. Defendant told Pennock they had been out together that evening and he was taking Baughman home. A knife, a 12-gauge shotgun shell, and a plaid shirt were later found in defendant's vehicle. These facts support an accountability theory. The jury could easily have concluded that defendant worked with Baughman to commit the robbery by driving to and from Lindsay's Tavern and by carrying the robbery weapons in his vehicle. Therefore, we hold the trial court's decision to instruct the jury on accountability was not error.

■ Defendant's remaining argument is that the trial court erred in granting him 139 days of credit against his sentence. He maintains, and the State concedes, that he is entitled to 140 days of credit. Based upon our review of the record, we disagree and reject the State's concession. In *People v. Donnelly*, 226 Ill. App. 3d 771, 779, 589 N.E.2d 975, 980 (1992), this court addressed the subject of computing a defendant's credit for time served at the sentencing hearing and stated:

> "Because of the statutory right to the credit, we hold that the error in computing the credit is not waived by failure of the defendant *** to call the error to the trial court's attention. *** [P]roper trial-court practice at the time of sentencing would include taking a few additional minutes to discuss credit-time computation with the prosecutor, defense counsel, and defendant—and then fix the number of days. From our experience, that effort might well avoid the loss of labor necessitated in the appellate process and the remandment process."

Not long thereafter, this court decided *People v. Curtis*, 233 Ill. App. 3d 416, 420, 599 N.E.2d 101, 103 (1992), and, citing *Donnelly*, stated:

> "Both the State's Attorney and defense counsel have an obligation to assist the court, and *both* are obligated to make sure the defendant receives neither more nor less than the time credit to which he is entitled. We see little justification or explanation for errors in computing such credit." (Emphasis in original.)

In *People v. Steskal*, 236 Ill. App. 3d 821, 824, 602 N.E.2d 977, 979 (1992), this court reaffirmed the views stated in *Curtis*, noted that

neither the State nor defense counsel in that case offered the trial court any assistance in computing credit, and wrote the following:

> "The trial judge should seek confirmation from defense counsel and the [State] as to the accuracy of [the probation office's presentence report] computation [of the total days for which defendant is entitled to credit for time served]."

The present case differs from *Donnelly*, *Curtis*, and *Steskal* because the records in each of those cases were silent as to the defendant's agreement with the trial court's determination of the number of days for which the defendant was entitled to credit for time served. Here, however, the record before us shows that the trial court did precisely what this court urged in *Donnelly*, *Curtis*, and *Steskal*; namely, (1) it consulted with the State and defense counsel regarding the credit defendant was purportedly due for time served, (2) it sought—and received (through defense counsel)—defendant's input on and agreement with the total number of days' credit, and (3) it corrected the number of days' credit according to defense counsel's request. We conclude defendant waived any claim for credit beyond that requested at the time of the sentencing hearing.

In concluding that defendant in this case has waived his argument on appeal that he is entitled to an additional day's credit for time served, we are mindful of the recent decision of the supreme court in *People v. Woodard*, 175 Ill. 2d 435, 677 N.E.2d 935 (1997). In that case, the supreme court overruled the decision of this court in *People v. Toolate*, 274 Ill. App. 3d 408, 654 N.E.2d 605 (1995), and held that the $5-per-diem monetary credit against the fine imposed for time spent in jail prior to sentencing, provided under section 110—14 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110—14 (West 1994)), may be allowed even on appeal. *Woodard*, 175 Ill. 2d at 456-57, 677 N.E.2d at 945-46. In our judgment, *Woodard* and *Toolate* are distinguishable, since the records of the sentencing hearing in each were silent on the subject of the defendant's credit under section 110—14 of the Code against the fine the court imposed. See *Woodard*, 175 Ill. 2d at 438, 677 N.E.2d at 937; *Toolate*, 274 Ill. App. 3d at 409, 654 N.E.2d at 606. Here, however, defendant was not silent at the sentencing hearing. Instead, he got the sentence credit correction that he sought. Thus, this case is more like those situations in which the defendant not only fails to object, but affirmatively concurs in the action of the trial court, thereby waiving any objection to the action.

Although it appears defendant was entitled to 140 days of credit, we fail to see how this mistake can be attributed to the trial court. Rather, the error in calculating defendant's sentence credit was the

result of defense counsel's representations. Accordingly, defendant cannot now complain. As stated by our supreme court in *People v. Heard*, 396 Ill. 215, 219-20, 71 N.E.2d 321, 323 (1947):

> "It is a well-settled principle of law that an accused may not ask the court to proceed in a given manner and then assign as error in a court of review the ruling or action which he procured." *People v. Heard*, 396 Ill. 215, 219-20, 71 N.E.2d 321, 323 (1947).

Accord *People v. Lowe*, 153 Ill. 2d 195, 199, 606 N.E.2d 1167, 1169 (1992).

For these reasons, we affirm defendant's convictions and sentence.

Affirmed.

KNECHT, J., concurs.

JUSTICE McCULLOUGH, concurring in part and dissenting in part:

I agree that the trial court did not err in instructing the jury on accountability but do not agree that the defendant is foreclosed from receiving 140 days' credit for time served as conceded by the State.

Here the defendant, the State, and this court agree that "defendant was entitled to 140 days of credit." 289 Ill. App. 3d at 356. *Woodard* (175 Ill. 2d at 450, 677 N.E.2d at 942) concerned a $5 credit " 'upon application of the defendant.' " Even though no application was made, there was no waiver. I refer to my dissent in *People v. Moore*, 289 Ill. App. 3d 357 (1997).